Theodore V. Wells, Jr. (TW 2830)
Jeh Charles Johnson
Maria H. Keane
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**
**1285 Avenue of the Americas**
**New York, New York 10019-6064**
**(212) 373-3000**

Francis X. Dee (FD 7739)
Stephen F. Payerle (SP 9780)
David B. Beal
**McELROY DEUTSCH MULVANEY & CARPENTER LLP**
**100 Mulberry Street**
**Newark, New Jersey 07102-4079**
**(973) 622-7711**

Donald R. Livingston
**AKIN GUMP STRAUSS HAUER & FELD, L.L.P.**
**Robert S. Strauss Building**
**1333 New Hampshire Avenue, N.W.**
**Washington, D.C. 20036**
**(202) 887-4000**

Nancy Rafuse
**ASHE RAFUSE & HILL LLP**
**1355 Peachtree Street**
**Suite 500**
**Atlanta, GA 30309**
**(404) 253-6000**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Nilda GUTIERREZ, Linda MORGAN, Wayne BROWN, and Krista MARSHALL, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON, <br><br> Defendant. | Civil Action No. 01-5302 (WHW) <br><br> **ANSWER TO SECOND** <br> **<u>AMENDED COMPLAINT</u>** |

Defendant Johnson & Johnson, by its attorneys, Paul, Weiss, Rifkind, Wharton & Garrison, McElroy Deutsch Mulvaney & Carpenter LLP, Akin, Gump, Strauss, Hauer & Feld, L.L.P. and Ashe Rafuse & Hill LLP, responds to the Second Amended Complaint as follows:

## I.

## PRELIMINARY STATEMENT

1. Johnson & Johnson is committed to equal opportunity in the workplace.  While Johnson & Johnson believes in the independence and decentralized management of its many subsidiary companies, its subsidiaries are committed to equal opportunity, too.  For these reasons, Johnson & Johnson denies the allegations in this lawsuit of a pattern or practice of race discrimination.  Based on the circumstances of their individual cases, Johnson & Johnson also denies the allegations of discrimination by the four named plaintiffs.

2. Johnson & Johnson cares deeply about fair and equitable treatment of all employees.  Johnson & Johnson recognizes that equal opportunity is not only a legal requirement, but it is also the right thing to do.  In addition to equal opportunity, Johnson & Johnson believes in and embraces a diverse work force because it brings value to the company, customers and employees. African American and Hispanic employees have advanced to become Presidents, Vice Presidents and other senior executives and managers of Johnson & Johnson or its subsidiaries – key positions in the decentralized management structures of those companies.

3. Johnson & Johnson's efforts and accomplishments in achieving a diverse work force have been acknowledged through awards or national rankings by the

U.S. Department of Labor and the Council on Economic Priorities, as well as *Fortune, Hispanic Magazine, Black Collegian*, *Diversity Inc.com* and a number of other publications.

       4.     Johnson & Johnson encourages and funds support organizations for minority employees, such as the African American Leadership Council, the African American Women's Leadership Council, Hispanic Organization for Leadership and Achievement ("HOLA"), Helping Our Neighbors with Our Resources ("HONOR"), the Cultural Heritage Committee and the Chinese American Association of Johnson & Johnson Employees. For 26 years, it has sponsored an Equal Opportunity/Affirmative Action Awards Program to recognize individuals and teams from across the Johnson & Johnson family of companies who excel at promoting diversity. In 2001, Johnson & Johnson inaugurated an Office of Diversity.

       5.     Johnson & Johnson and its subsidiaries have worked to create an environment in which employees of all races can succeed and grow professionally. Johnson & Johnson did this long before this lawsuit was filed and will continue to do so. Johnson & Johnson recognizes that race discrimination still exists in American society, and that there is further progress to make on the road to a diverse workplace. Johnson & Johnson also recognizes that there is always room for improvement within itself and its subsidiary companies. However, Johnson & Johnson denies that a pattern or practice of discrimination exists at Johnson & Johnson or any of its subsidiaries.

## II.

## <u>RESPONSE TO SPECIFIC ALLEGATIONS</u>

For its detailed answers to the Second Amended Complaint, Johnson & Johnson incorporates by reference all of the responses in Section I above, and further responds:

1.      Defendant declines to respond to paragraph 1 of the Second Amended Complaint, because it does not contain allegations requiring an answer.

2.      Defendant denies the allegations contained in paragraph 2 of the Second Amended Complaint, except admits that plaintiffs purport to bring this action pursuant to certain provisions of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq.*, and N.J.S.A. § 10:5-1 *et seq.*

3.      Defendant denies the allegations contained in paragraph 3 of the Second Amended Complaint, unless otherwise stated in response to specific allegations elsewhere in the Second Amended Complaint, which allegations paragraph 3 purports to summarize.

4.      Defendant denies the allegations contained in paragraph 4 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the fourth and fifth sentences of paragraph 4 because the Second Amended Complaint fails to specify to which high-ranking African Americans or meeting it refers.

5.      Defendant denies the allegations contained in paragraph 5 of the Second Amended Complaint.

6.      Defendant denies the allegations contained in paragraph 6 of the Second Amended Complaint.

7.      Defendant denies the allegations contained in paragraph 7 of the Second Amended Complaint, except admits that Johnson & Johnson's Credo was written in 1943 by then-chairman Robert Wood Johnson, that the Credo is a guiding document, and that it currently reads in its entirety:

We believe our first responsibility is to the doctors, nurses and patients, to mothers and fathers and all others who use our products and services. In meeting their needs everything we do must be of high quality. We must constantly strive to reduce our costs in order to maintain reasonable prices. Customers' orders must be serviced promptly and accurately. Our suppliers and distributors must have an opportunity to make a fair profit.

We are responsible to our employees, the men and women who work with us throughout the world. Everyone must be considered as an individual. We must respect their dignity and recognize their merit. They must have a sense of security in their jobs. Compensation must be fair and adequate, and working conditions clean, orderly and safe. We must be mindful of ways to help our employees fulfill their family responsibilities. Employees must feel free to make suggestions and complaints. There must be equal opportunity for employment, development and advancement for those qualified. We must provide competent management, and their actions must be just and ethical.

We are responsible to the communities in which we live and work and to the world community as well. We must be good citizens – support good works and charities and bear our fair share of taxes. We must encourage civic improvements and better health and education. We must maintain in good order the property we are privileged to use, protecting the environment and natural resources.

Our final responsibility is to our stockholders. Business must make a sound profit. We must experiment with new ideas. Research must be carried on, innovative programs developed and mistakes paid for. New equipment must be purchased, new facilities provided and new products launched. Reserves must be created to provide for adverse times. When we operate according to these principles, the stockholders should realize a fair return.

8.      Defendant denies the allegations contained in paragraph 8 of the Second Amended Complaint, except admits that in 1975 there was a rededication to the beliefs espoused in the Credo.

9.      Defendant denies the allegations contained in paragraph 9 of the Second Amended Complaint, except admits that jurisdiction pursuant to 28 U.S.C. §

1331, 1343(4) and 1367 exists as to Johnson & Johnson, a corporation separate and apart from its subsidiaries.

10.     Defendant denies the allegations contained in paragraph 10 of the Second Amended Complaint, except admits that Johnson & Johnson's worldwide headquarters is located in the District of New Jersey, and that Johnson & Johnson can be found and conducts business in the District of New Jersey.

11.     Defendant denies the allegations contained in paragraph 11 of the Second Amended Complaint, except admits that plaintiff Nilda Gutierrez is an Hispanic-American adult citizen and admits, upon information and belief, that she resides in New Brunswick, New Jersey, that she received an Associate's degree in management from Middlesex County Community College in 1994 and a Bachelor of Arts degree in industrial labor relations from Rutgers University – Douglass College in 1997, and that she received awards. Defendant also admits that Ms. Gutierrez was employed by Johnson & Johnson Services, Inc., a subsidiary of Johnson & Johnson, as a Recruiting Consultant.

12.     Defendant denies the allegations contained in paragraph 12 of the Second Amended Complaint, except admits that plaintiff Linda Morgan is an African-American adult citizen and admits, upon information and belief, that she resides in Piscataway, New Jersey, that she received a Bachelor of Science degree from New Jersey Institute of Technology in 1982, and that she received the awards referred to in paragraph 12 in or about the times stated therein, except defendant is without knowledge or information sufficient to form a belief as to her receipt of a corporate quality award in 1987 or 1988.  Defendant also states that Ms. Morgan worked for Ethicon, Inc., a subsidiary company of Johnson & Johnson, from 1985 until she voluntarily resigned in

September 2004, and that before that, she was employed by Ortho Diagnostic Systems, Inc., a separate Johnson & Johnson subsidiary company, in the summers of 1979-81 as a co-op student, and then as an employee from 1982 to 1984, and by Johnson & Johnson from 1984 to 1985.

13.     Defendant denies the allegations contained in paragraph 13 of the Second Amended Complaint, except admits that plaintiff Wayne Brown is an African-American adult citizen and admits, upon information and belief, that he resides in Franklin Park, New Jersey, and that he holds a Bachelor of Science degree in Administration of Justice from Rutgers University.  Defendant denies knowledge or information sufficient to form a belief as to Mr. Brown's current employment and educational endeavors.  Defendant admits that Mr. Brown was employed by Johnson & Johnson as a Security Supervisor from on or about October 13, 1995 until on or about January 31, 2000.  Defendant states that plaintiffs' allegations that he "met his professional goals and earned several awards throughout his service to J&J" are vague and ambiguous, and therefore it denies those allegations.

14.     Defendant denies the allegations contained in paragraph 14 of the Second Amended Complaint, except admits that plaintiff Krista Marshall is an African-American adult citizen and admits, upon information and belief, that she resides in Plainfield, New Jersey, that she holds a Bachelor of Science degree in Chemical Engineering from North Carolina State University, that she holds an Executive Master of Business Administration degree from Duke University's Fuqua School of Business, and that she received awards.  Defendant also admits that Ms. Marshall currently works for Johnson & Johnson Health Care System, Inc., a subsidiary of Johnson & Johnson.

15.     In response to the allegations in paragraph 15 of the Second Amended Complaint, Defendant admits that it maintains headquarters in New Brunswick, New Jersey, and refers to its 2000 Annual Report for the content thereof.  Defendant states that it is a New Jersey corporation.  Defendant further states that it is a corporation separate from its subsidiary companies.  Except as so stated, Defendant denies the allegations contained in paragraph 15 of the Second Amended Complaint.

16.     Defendant denies the allegations contained in paragraph 16 of the Second Amended Complaint.

17.     Defendant denies the allegations in paragraph 17 of the Second Amended Complaint, except states that Johnson & Johnson employs more than 1,000 people in its corporate offices.

18.     Defendant denies the allegations contained in paragraph 18, except admits that some of its subsidiary companies engage in interstate and foreign commerce by the sale, manufacture and distribution of health care products and related products, for the consumer, pharmaceutical or professional markets.

19.     Defendant denies the allegations contained in paragraph 19 of the Second Amended Complaint, except admits that some of its subsidiary companies market and distribute the products listed in paragraph 19 of the Second Amended Complaint.

20.     Defendant denies the allegations contained in paragraph 20 of the Second Amended Complaint, except admits that some of its subsidiary companies distribute the products listed in paragraph 20 of the Second Amended Complaint.

21.     Defendant denies the allegations contained in paragraph 21 of the Second Amended Complaint, except admits that some of its subsidiary companies distribute products of the type listed in paragraph 21 of the Second Amended Complaint.

22.     Defendant admits, upon information and belief, that Johnson & Johnson was ranked 57th by *Fortune* magazine in its Fortune 500 listings for 2001 and was listed as the 5th largest drug company in the United States by *Money* magazine.

23.     Defendant repeats the responses contained in paragraphs 1-22 of this Answer as if fully set forth herein.

24.     Defendant admits that plaintiffs purport to bring this action on their own behalf and on behalf of a class of persons under the Federal Rules of Civil Procedure cited in paragraph 24 of the Second Amended Complaint, but denies that the allegations contained in the Second Amended Complaint are appropriate for resolution as a class action.

25.     Defendant admits that plaintiffs purport to represent a class of African-American and Hispanic employees of Johnson & Johnson and its subsidiary companies described in paragraph 25 of the Second Amended Complaint, but denies that the allegations contained in the Second Amended Complaint are appropriate for resolution as a class action.

26.     In response to paragraph 26 of the Second Amended Complaint, defendant denies that there is any proper class.

27.      Defendant denies the allegations contained in paragraph 27 of the Second Amended Complaint.

28.     Defendant denies the allegations contained in paragraph 28 of the Second Amended Complaint, except admits that Ms. Gutierrez purports to allege discrimination in compensation, that Ms. Morgan, Mr. Brown and Ms. Marshall purport to allege discrimination in promotions and compensation.

29.     Defendant denies the allegations contained in paragraph 29 of the Second Amended Complaint.

30.     Defendant denies the allegations contained in paragraph 30 of the Second Amended Complaint.

31.     Defendant denies the allegations contained in paragraph 31 of the Second Amended Complaint.

32.     Defendant denies the allegations contained in paragraph 32 of the Second Amended Complaint.

33.     Defendant repeats the responses contained in paragraphs 1-32 of this Answer as if fully set forth herein.

34.     Defendant denies the allegations contained in paragraph 34 of the Second Amended Complaint.

35.     Defendant denies the allegations contained in paragraph 35 of the Second Amended Complaint.

36.     Defendant denies the allegations contained in paragraph 36 of the Second Amended Complaint, except admits that it hired an independent consultant to conduct a communications survey in or about 1997.

37.     Defendant denies the allegations contained in paragraph 37 of the Second Amended Complaint.

38.      Defendant denies the allegations contained in paragraph 38 of the Second Amended Complaint.

39.      Defendant denies the allegations contained in paragraph 39 of the Second Amended Complaint, except states that performance evaluations include criteria related to diversity.

40.      Defendant denies the allegations contained in paragraph 40 of the Second Amended Complaint, and refers to documents cited therein for their content.

41.      Defendant denies the allegations contained in paragraph 41 of the Second Amended Complaint.

42.      Defendant denies the allegations contained in paragraph 42 of the Second Amended Complaint, except admits that Johnson & Johnson and/or its subsidiary companies, either in the normal course of business or at the direction of counsel, conduct examinations of their employment policies and practices.

43.      Defendant denies the allegations contained in paragraph 43 of the Second Amended Complaint.

44.      Defendant denies the allegations contained in paragraph 44 of the Second Amended Complaint, except admits that a meeting of African-American employees of Johnson & Johnson and/or its subsidiary companies was held on November 3, 2001 to discuss diversity and other issues.

45.      Defendant denies the allegations contained in paragraph 45 of the Second Amended Complaint, except admits the first two sentences of paragraph 45.

46.      Defendant denies the allegations contained in paragraph 46 of the Second Amended Complaint.

47.    Defendant denies the allegations contained in paragraph 47 of the Second Amended Complaint, except admits the second sentence of paragraph 47 was true until late 2003.

48.    Defendant denies the allegations contained in paragraph 48 of the Second Amended Complaint, except admits that Johnson & Johnson and its subsidiary companies generally seek to fill job openings from within their organization if possible, and states that job openings are filled on a non-discriminatory basis.

49.    Defendant denies the allegations contained in paragraph 49 of the Second Amended Complaint.

50.    Defendant denies the allegations contained in paragraph 50 of the Second Amended Complaint.

51.    Defendant admits that jobs above the Director level are not generally posted. Defendant otherwise denies the allegations contained in paragraph 51 of the Second Amended Complaint, except states that the management within the respective subsidiary companies of Johnson & Johnson utilize Succession and Development Planning processes to identify diverse pools of high potential candidates and to provide qualified candidates with experience for their professional growth and development. Defendant admits that among the objectives of its Succession Planning Process are to provide senior management of Johnson & Johnson and its subsidiary companies with an assessment of available management talent, to identify highly promising future leaders, and to review appropriate developmental plans for those individuals.

52.    Defendant denies the allegations contained in paragraph 52 of the Second Amended Complaint, except admits that its Succession Planning Process is

important in identifying individuals of all races, national origins, and other protected classifications with executive potential.

53.     Defendant denies the allegations contained in paragraph 53 of the Second Amended Complaint, and refers to the website for its contents.

54.     Defendant denies the allegations contained in paragraph 54 of the Second Amended Complaint.

55.     Defendant denies the allegations contained in paragraph 55 of the Second Amended Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Second Amended Complaint, except admits that the ratings for the year 2000 followed a five point scale (with gradations within the points on the scale), that the scale for performance was as set forth in paragraph 56, and that the scale with respect to "performance" was changed to a nine point scale in February 2001.

57.     Defendant denies the allegations contained in paragraph 57 of the Second Amended Complaint.

58.     Defendant denies the allegations contained in paragraph 58 of the Second Amended Complaint.

59.     Defendant denies the allegations contained in paragraph 59 of the Second Amended Complaint and further states that candidates generally will be released to interview for a new position unless the employee has been in the job for less than one year or their performance or potential evaluations indicate that a move would not be appropriate.

60.     Defendant denies the allegations contained in paragraph 60 of the Second Amended Complaint.

61.     Defendant denies the allegations contained in paragraph 61 of the Second Amended Complaint, except admits the third sentence of paragraph 61.

62.     Defendant denies the allegations contained in paragraph 62 of the Second Amended Complaint.

63.     Defendant denies the allegations contained in paragraph 63 of the Second Amended Complaint.

64.     Defendant denies the allegations contained in paragraph 64 of the Second Amended Complaint, except admits that Ms. Morgan expressed in her career development plan an aspiration for future promotion to a Director level position.

65.     Defendant denies the allegations contained in paragraph 65 of the Second Amended Complaint, except admits that during his employment with Johnson & Johnson, plaintiff Wayne Brown received overall performance ratings in the "competent" range, that he attended seminars at the Company's expense, and that he expressed interest in promotion to the position of Manager, Security.

66.     Defendant denies the allegations contained in paragraph 66 of the Second Amended Complaint.

67.     Defendant denies the allegations contained in paragraph 67 of the Second Amended Complaint.

68.     Defendant denies the allegations contained in paragraph 68 of the Second Amended Complaint.

69.     Defendant denies the allegations contained in paragraph 69 of the Second Amended Complaint, except to refer to the Johnson & Johnson Credo as set forth in its entirety in paragraph 7 of Section II of this Answer.

70.     Defendant denies the allegations contained in paragraph 70 of the Second Amended Complaint, except admits that its compensation decisions are based on a number of factors, including performance, scope of responsibility, experience level, expertise level, competitive market data, internal equity factors, pay strategy and stated targets.

71.     Defendant denies the allegations contained in paragraph 71 of the Second Amended Complaint, except admits that Johnson & Johnson considers a number of factors in setting the base salaries of its entry-level employees, including salaries at comparable companies for comparable positions, level of responsibility, expertise in the field, compensation of peers, and existing pay.

72.     Defendant denies the allegations contained in paragraph 72 of the Second Amended Complaint, except admits that market data concerning salaries at comparable companies for comparable positions are among a range of factors considered in making salary determinations.

73.     Defendant denies the allegations contained in paragraph 73 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the last three sentences of paragraph 73.

74.     Defendant denies the allegations contained in paragraph 74 of the Second Amended Complaint.

75.    Defendant denies the allegations contained in paragraph 75 of the Second Amended Complaint.

76.    Defendant denies the allegations contained in paragraph 76 of the Second Amended Complaint, except admits that Johnson & Johnson employs salary bands.

77.    Defendant denies the allegations contained in paragraph 77 of the Second Amended Complaint, except admits that performance ratings are among the factors considered in compensation decisions.

78.    Defendant denies the allegations contained in paragraph 78 of the Second Amended Complaint.

79.    Defendant denies the allegations contained in paragraph 79 of the Second Amended Complaint.

80.    Defendant denies the allegations contained in paragraph 80 of the Second Amended Complaint except admits that guidance is provided with respect to recommended ranges of salary increases and stock awards.

81.    Defendant denies the allegations contained in paragraph 81 of the Second Amended Complaint, except admits that certain employees who otherwise might not be eligible for stock awards and options may be awarded them as an exception based on their performance, business contributions and other factors.

82.    Defendant denies the allegations contained in paragraph 82 of the Second Amended Complaint, except admits that Ms. Gutierrez was hired effective August 4, 1997 by Johnson & Johnson Services, Inc. at an initial salary of $40,000. Defendant further states that Ms. Gutierrez received a salary increase of $1,400 in or

16

about August 1998 and a cash bonus of about $1,600 in or about December 1998. Defendant states that her performance in or after January 1999 did not warrant any further salary increase or bonus.

83.     Defendant denies the allegations contained in paragraph 83 of the Second Amended Complaint, except as stated in response to the allegations contained in paragraphs 82, 99, 101, 104 and 106.

84.     Defendant denies the allegations contained in paragraph 84 of the Second Amended Complaint, except admits that plaintiff Wayne Brown, prior to his employment with Johnson & Johnson, worked as a security officer for a private security company assigned to Johnson & Johnson Worldwide Headquarters, that his initial annual salary as an employee of Johnson & Johnson was $31,000, and admits, upon information and belief, that he holds a Bachelor of Science degree in Administration of Justice from Rutgers University.

85.     Defendant denies the allegations contained in paragraph 85 of the Second Amended Complaint, except admits that plaintiff Wayne Brown received bonuses during his employment with Johnson & Johnson.

86.     Defendant denies the allegations contained in paragraph 86 of the Second Amended Complaint.

87.     Defendant denies the allegations contained in paragraph 87 of the Second Amended Complaint.

88.     Defendant denies the allegations contained in paragraph 88 of the Second Amended Complaint.

89.     Defendant denies the allegations contained in paragraph 89 of the Second Amended Complaint.

90.     Defendant denies the allegations contained in paragraph 90 of the Second Amended Complaint.

91.     Defendant denies the allegations contained in paragraph 91 of the Second Amended Complaint.

92.     Defendant denies the allegations contained in paragraph 92 of the Second Amended Complaint.

93.     Defendant denies the allegations contained in paragraph 93 of the Second Amended Complaint.

94.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Second Amended Complaint, except admits that Ms. Gutierrez is an Hispanic-American, that she was employed by Johnson & Johnson Services, Inc., a Johnson & Johnson subsidiary, that she held the position of Recruiting Consultant from on or about August 4, 1997, and that she received awards.  Defendant further admits, upon information and belief, that Ms. Gutierrez received an Associate's degree in management from Middlesex County Community College in 1994 and a Bachelor of Arts degree in industrial labor relations from Rutgers University – Douglass College in 1997.

95.     Defendant denies the allegations contained in paragraph 95 of the Second Amended Complaint, except states that Ms. Gutierrez was hired by Advanced Care Products, a Johnson & Johnson subsidiary company, on or about July 25, 1994 as a part-time intern/cooperative education student and that she worked intermittently as a

Quality Assurance Administrative Assistant until on or about January 3, 1997.  Defendant further states that Ms. Gutierrez was employed by another Johnson & Johnson subsidiary company, Ortho Biotech Products, L.P., as a summer intern during the summers of 1995 and 1996.  Defendant admits that Ms. Gutierrez was hired by Johnson & Johnson Services, Inc. as a Recruiting Consultant effective August 4, 1997.  Defendant denies knowledge or information sufficient to form a belief as to the third sentence of paragraph 95.

96.     Defendant denies the allegations contained in paragraph 96 of the Second Amended Complaint, except admits that Ms. Gutierrez's starting salary as a Recruiting Consultant at Johnson & Johnson Services, Inc. was $40,000.  Defendant admits upon information and belief that Ms. Gutierrez negotiated a higher starting salary than the amount initially offered to her..

97.     Defendant denies the allegations contained in paragraph 97 of the Second Amended Complaint, except as stated in response to the allegations contained in paragraph 82.

98.     Defendant denies the allegations contained in paragraph 98 of the Second Amended Complaint, except admits that some persons in the recruiting department of Johnson & Johnson Services, Inc. were promoted during the time that Ms. Gutierrez was employed in the position of Recruiting Consultant.

99.     Defendant denies the allegations contained in paragraph 99 of the Second Amended Complaint except admits that Ms. Gutierrez's performance was not rated for 1997 because she had just recently started in her position and that her performance for 1998 was rated "Competent."  Defendant states that the performance

ratings for Recruiting Consultants, including Ms. Gutierrez, resulted from a collaborative process in which the Directors of the Recruiting Department met with the Vice President of Recruiting to discuss and agree upon performance ratings for the Recruiting Consultants and that an objective of this collaborative process was to promote fairness and even-handedness in the rating process across the Director groups.   Defendant further states that as a result of this collaborative process, and based upon Ms. Gutierrez's performance of her duties during 1999, her performance for 1999 was rated "Needs Improvement."  Defendant states that Ms. Gutierrez's performance in 1999 did not warrant a salary increase or bonus.

100.    Defendant denies the allegations contained in paragraph 100 of the Second Amended Complaint, except to admit that Ms. Gutierrez met with Mr. Deyo, then Vice President of Administration, and she discussed issues concerning her treatment.

101.    Defendant denies the allegations contained in paragraph 101 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to statements made to Ms. Gutierrez by the individual referred to in the Second Amended Complaint as her manager who is no longer employed by Johnson & Johnson Services, Inc.  Defendant further states that as a result of the collaborative process described in paragraph 99 of this Answer, and based upon Ms. Gutierrez's performance of her duties in 2000, she was rated "Needs Improvement" in 2000.  Defendant also states that Ms. Gutierrez's performance in 2000 did not warrant a salary increase or bonus.

102.    Defendant denies the allegations contained in paragraph 102 of the Second Amended Complaint, except admits that Ms. Gutierrez was provided with a

written Performance Improvement Plan in February 2001 to assist her in improving her performance.

103.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 103 of the Second Amended Complaint, except admits that Ms. Gutierrez was assigned an executive coach, Kevin Slater, to further help her improve her performance.

104.    Defendant denies the allegations contained in paragraph 104 of the Second Amended Complaint, except as stated in response to the allegations contained in paragraph 82, and to state that the anniversary date of Ms. Gutierrez's hiring was August 4, and that factors considered in compensation decisions at Johnson & Johnson Services, Inc. include internal equity.

105.    Defendant denies the allegations contained in paragraph 105 of the Second Amended Complaint, except admits that Jeanne Hamway met with Ms. Gutierrez on or about September 21, 2001, that their discussion included the option to remain on the performance improvement plan or to be reassigned to the corporate career center, and that Ms. Gutierrez later elected to be so reassigned.

106.    Defendant denies the allegations contained in paragraph 106 of the Second Amended Complaint, except to state that year-end bonuses were awarded in or about December 2001 to qualified, eligible employees.

107.    Defendant denies the allegations of paragraph 107 of the Second Amended Complaint, except to refer to the identified letter for its contents.

108.     Defendant denies the allegations of paragraph 108 of the Second Amended Complaint and states that by letter dated March 15, 2002, Ms. Gutierrez resigned from her employment at Johnson & Johnson Services, Inc.

109.     Defendant denies the allegations contained in paragraph 109 of the Second Amended Complaint, except admits that Linda Morgan is an African American and admits, upon information and belief, that she resides in Piscataway, New Jersey. Defendant also admits that Ms. Morgan worked for Ethicon, Inc., a Johnson & Johnson subsidiary company, that she was employed at Ortho Diagnostic Systems, Inc., a separate Johnson & Johnson subsidiary company, in the summers of 1979-81 as a co-op student, and that she was hired as an Associate Industrial Engineer at Ortho Diagnostic Systems, Inc. in or about August 1982.  Defendant states that Ms. Morgan was employed by Ortho Diagnostic Systems, Inc. from 1982 to 1984 and by Johnson & Johnson from 1984 to 1985, and that she was employed by Ethicon, Inc. from 1985 to 2004.

110.     Defendant denies the allegations contained in paragraph 110 of the Second Amended Complaint except admits, upon information and belief, that Ms. Morgan received a Bachelor of Science degree from New Jersey Institute of Technology in 1982.  Defendant also admits the allegations contained in the second sentence of paragraph 110.  Defendant denies the allegations contained in the third sentence of paragraph 110 of the Second Amended Complaint, except admits that Ms. Morgan began working for Ethicon, Inc. in 1985 and that she received several promotions to management positions and had responsibilities for engineering, production and purchasing.

111.    Defendant denies the allegations contained in paragraph 111 of the Second Amended Complaint, except admits, upon information and belief, that Ms. Morgan received the awards referred to in paragraph 111 of the Second Amended Complaint in or about the times stated therein, and denies knowledge or information sufficient to form a belief as to her receipt of a corporate quality award in 1987 or 1988.

112.    Defendant denies the allegations contained in paragraph 112 of the Second Amended Complaint, except states that Ms. Morgan was provided the position of Staff Manager of Polymer and Monofilament Production at Ethicon, Inc.'s Cornelia, Georgia plant in order to give her multi-plant experience as a part of her managerial development.  Defendant further states that Ethicon, Inc. paid substantial relocation costs for Ms. Morgan to transfer to Cornelia, Georgia.  Defendant denies the allegations contained in the second and third sentences of paragraph 112 of the Second Amended Complaint, except admits that Ms. Morgan returned to Ethicon, Inc.'s Somerville plant in November 1996 after she requested an early transfer back to New Jersey for personal reasons.  Defendant states that, in order to accommodate her personal request at that time, Ms. Morgan was transferred into a Project Leader position in Somerville, New Jersey.

113.    In response to paragraph 113 of the Second Amended Complaint, defendant admits that Ms. Morgan reported to the Director of Purchasing, an African American, up until February 2001, and that sometime prior to February 2001 the Director announced that he would be retiring, and that Ms. Morgan expressed to him her interest in being considered for his position.

114.    Defendant denies the allegations contained in paragraph 114 of the Second Amended Complaint except admits that five candidates were selected to be

interviewed for the Director of Purchasing position, that the five candidates included four Caucasian males and one Caucasian female, and that Ms. Morgan was not among them.

115.    Defendant denies the allegations contained in paragraph 115 of the Second Amended Complaint, except admits that two of the candidates for the Director of Purchasing position were not previously employed at Ethicon, Inc.  Defendant further states that the individuals selected had substantial relevant experience both in other Johnson & Johnson subsidiary companies as well as other unrelated companies. Defendant admits that Ms. Morgan was not selected to interview for the Director of Purchasing position and that a Caucasian male was selected to fill the position. Defendant further states that the selection of candidates was based on the qualifications and experience of the individuals, not their race.

116.    Defendant denies the allegations contained in paragraph 116 of the Second Amended Complaint except to state that a Vice President of Operations position at the Wound Management division of Ethicon, Inc. was filled in 2001 by an individual who is female and Caucasian, and that Ms. Morgan was not qualified for that position.

117.    Defendant denies the allegations contained in paragraph 117 of the Second Amended Complaint except to state that a Director of Operations position in the Gynecare division of Ethicon, Inc. was filled in the Fall 2001 by an individual who is male and Caucasian, and the position is located in New Jersey.

118.    Defendant denies the allegations contained in paragraph 118 of the Second Amended Complaint.

119.     Defendant denies the allegations contained in paragraph 119 of the Second Amended Complaint, except admits that plaintiff Wayne Brown is African-American, and that he was employed at Johnson & Johnson as a Security Supervisor.

120.     Defendant denies the allegations of paragraph 120 of the Second Amended Complaint.

121.     Defendant denies the allegations of paragraph 121 of the Second Amended Complaint, except admits that plaintiff Wayne Brown, prior to his employment with Johnson & Johnson, worked as a security officer for a private security company assigned to Johnson & Johnson World Headquarters, and admits, upon information and belief, that he holds a Bachelor of Science degree in Administration of Justice from Rutgers University.   Defendant further states that plaintiff Wayne Brown was hired by Johnson & Johnson in October 1995 as a Security Supervisor at the starting annual salary of $31,000, and that his final annual salary was $39,600.

122.     Defendant denies the allegations of paragraph 122 of the Second Amended Complaint, except admits that plaintiff Wayne Brown attended seminars at the Company's expense during his employment with Johnson & Johnson.  It denies knowledge or information sufficient to form a belief as to any education or training Mr. Brown may have received before or after his employment with Johnson & Johnson.

123.     Defendant denies the allegations of paragraph 123 of the Second Amended Complaint, except admits that as a Security Supervisor, Mr. Brown, together with the security services outside contractor, coordinated and supervised the activities of the contract security officers during his shift.  Defendant further states that Mr. Brown

had responsibility for the physical security of the New Brunswick campus during his shift.

124.    Defendant admits the allegations of paragraph 124 of the Second Amended Complaint.

125.    Defendant denies the allegations of paragraph 125 of the Second Amended Complaint, except admits that Mr. Brown verbally expressed interest in the Manager, Security position to Steve Chupa.

126.    Defendant denies the allegations contained in paragraph 126 of the Second Amended Complaint.

127.    Defendant denies the allegations contained in paragraph 127 of the Second Amended Complaint, except admits that Mr. Chupa advised Mr. Brown that the Company was looking for a candidate for the Manager, Security position with a law enforcement background – specifically, someone with experience in dealing with other law enforcement officials who could establish contacts with local law enforcement officials.

128.    Defendant denies the allegations contained in paragraph 128 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the allegations that Mr. Brown was "dumbfounded," and states that the candidate selected for the Manager, Security position, Michael Cubbage, was better qualified for that position than Mr. Brown.

129.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 129 of the Second Amended Complaint.

130.    Defendant denies the allegations of paragraph 130 of the Second Amended Complaint, except admits that effective September 30, 1996, it hired Ellen Conrad, a Caucasian female, as a Security Supervisor to replace Lisa Carbone, a Caucasian female, and that Mr. Chupa asked Mr. Brown to assist with Ms. Conrad's training.

131.    Defendant denies the allegations contained in paragraph 131 of the Second Amended Complaint.

132.    Defendant denies the allegations contained in paragraph 132 of the Second Amended Complaint, except admits that plaintiff Wayne Brown received bonuses during his employment with Johnson & Johnson.

133.    Defendant denies the allegations contained in paragraph 133 of the Second Amended Complaint.

134.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 134 of the Second Amended Complaint.

135.    Defendant denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 135 of the Second Amended Complaint.

136.    Defendant denies the allegations contained in paragraph 136 of the Second Amended Complaint, except admits that Ms. Marshall is an African-American, that she was employed Ethicon, Inc., a Johnson & Johnson subsidiary, from May 1991 to March 1997, and that she was employed by Johnson & Johnson Worldwide Headquarters from March 1997 to November 2002.  Defendant further states that, since November

2002, Ms. Marshall has been employed by Johnson & Johnson Health Care Systems Inc., and that she currently holds the position of Manager, Account Development, Contract Strategy and Management.

137.    Defendant denies the allegations contained in paragraph 137 of the Second Amended Complaint, except admits that Johnson & Johnson Worldwide Headquarters sponsored and fully-funded the $95,000 tuition for Ms. Marshall's Executive MBA from the Fuqua School of Business at Duke University. Defendant further admits that, during Ms. Marshall's career, she has been rated as an employee with high potential in Succession Planning, and has been favorably rated on her performance reviews, and has received awards.

138.    Defendant denies the allegations contained in paragraph 138 of the Second Amended Complaint.

139.    Defendant denies the allegations contained in paragraph 139 of the Second Amended Complaint, except admits, upon information an belief, that Ms. Marshall received a Bachelor of Science degree in Chemical Engineering from North Carolina State University – Raleigh.  Defendant further admits that plaintiff received an Executive Master of Business Administration degree from the Fuqua School of Business at Duke University.  Defendant further admits, on information and belief, that Ms. Marshall worked for Rohm & Haas in Louisville, Kentucky from 1988 to 1991 as a Process Engineer responsible for plexiglas resin.

140.    Defendant denies the allegations contained in paragraph 140 of the Second Amended Complaint.

141.    Defendant denies the allegations contained in paragraph 141 of the Second Amended Complaint.  .

142.    Defendant denies the allegations contained in paragraph 142 of the Second Amended Complaint except states that Gary Coopersmith received a 3.91% merit increase in 1995.

143.    Defendant denies the allegations contained in paragraph 143 of the Second Amended Complaint, except admits that Stephen Ogden, a Caucasian, was transferred to the position of Analyst at Johnson & Johnson Worldwide Headquarters on July 14, 1997 and that, on October 5, 1998, he was promoted to the position of Supply Manager.

144.    Defendant denies the allegations contained in paragraph 144 of the Second Amended Complaint.

145.    Defendant denies the allegations contained in paragraph 145 of the Second Amended Complaint.

146.            Defendant denies the allegations contained in paragraph 146 of the Second Amended Complaint.

147.            Defendant denies the allegations contained in paragraph 147 of the Second Amended Complaint, except admits that Brian Bender, a Caucasian, was promoted to the position of Director, Global MD&D Procurement, on October 1, 2001.

148.            Defendant denies the allegations contained in paragraph 148 of the Second Amended Complaint, except states that, in 2001, Eric Mendola, a Caucasian, was offered the position of Commodity Manager, Reverse Auctions.

149.          Defendant denies the allegations contained in paragraph 149 of the Second Amended Complaint, except states that, on March 4, 2002, Timothy Hayes, a Caucasian, transferred to the position of Director, Business Services, E-Store.

150.          Defendant denies the allegations contained in paragraph 150 of the Second Amended Complaint, except states that Johnson & Johnson Worldwide Headquarters sponsored and funded the $95,000 tuition for Ms. Marshall's Executive MBA from the Fuqua School of Business at Duke University.

151.          Defendant denies the allegations contained in paragraph 151 of the Second Amended Complaint, except admits that, on November 17, 2002, Ms. Marshall transferred to Johnson & Johnson Health Care Systems Inc. in the position of Project Manager, Contract Strategy and Management.

152.          Defendant denies the allegations contained in paragraph 152 of the Second Amended Complaint, except admits that, on July 21, 2003, Nicholas Addeo, a Caucasian, transferred into the position of Team Manager, Account Development, Contract Strategy and Management, and admits that, on August 18, 2003, John Riccardi, a Caucasian, transferred into the position of Manager, Account Development, Contract Strategy and Management.

153.          Defendant denies the allegations contained in paragraph 153 of the Second Amended Complaint.

154.     Defendant repeats the responses contained in paragraphs 1-153 of this Answer as if fully set forth herein.

155.     Defendant denies the allegations contained in paragraph 155 of the Second Amended Complaint.

156.    Defendant repeats the responses contained in paragraphs 1-155 of this Answer as if fully set forth herein.

157.    Defendant denies the allegations contained in paragraph 157 of the Second Amended Complaint, except to admit that Ms. Gutierrez and Ms. Morgan filed various charges of discrimination with the EEOC and received notices of right to sue related to certain charges.

158.    Defendant denies the allegations contained in paragraph 158 of the Second Amended Complaint.

159.    Defendant repeats the responses contained in paragraphs 1-158 of this Answer as if fully set forth herein.

160.    Defendant denies the allegations contained in paragraph 160 of the Second Amended Complaint.

161.    Defendant repeats the responses contained in paragraphs 1-160 of this Answer as if fully set forth herein.

162.    Defendant denies the allegations contained in paragraph 162 of the Second Amended Complaint.

163.    Defendant denies the allegations contained in paragraph 163 of the Second Amended Complaint.

164.    Defendant repeats the responses contained in paragraphs 1-163 of this Answer as if fully set forth herein.

165.    Defendant denies the allegations contained in paragraph 165 of the Second Amended Complaint.

166.    Defendant denies the allegations contained in paragraph 166 of the Second Amended Complaint.

## FIRST DEFENSE

The Second Amended Complaint fails to state a cause of action against Johnson & Johnson upon which relief may be granted.

## SECOND DEFENSE

The named plaintiffs' individual claims of discrimination on the basis of race have no merit because all personnel actions with respect to the named plaintiffs have been in all respects for legitimate, non-discriminatory business reasons and, as such, are not unlawful.

## THIRD DEFENSE

Any individual's claim that was not submitted under the Common Ground program should be dismissed or stayed.  Common Ground is a well-publicized employee dispute resolution program, the purpose of which is to provide employees with an informal and readily-available forum in which to resolve, among other issues, complaints of discrimination.  Common Ground is a mandatory program for employees of Johnson & Johnson and its subsidiary companies.

## FOURTH DEFENSE

Plaintiffs' claims and allegations on behalf of the putative class are factually and legally inappropriate for resolution as a class action under Rule 23 of the Federal Rules of Civil Procedure.

## FIFTH DEFENSE

Plaintiffs' individual claims and those on behalf of putative class members who are not employed by Johnson & Johnson are not properly asserted against this Defendant.

## SIXTH DEFENSE

Plaintiffs' complaint is barred, in whole or in part, in that it alleges a pattern or practice of discrimination that exists within and among companies not named as defendants in this action, and for whom plaintiffs do not work.

## SEVENTH DEFENSE

To the extent any of the personnel actions, policies, patterns or practices or actions complained of in the Second Amended Complaint exist or took place, they were in no way motivated by race or any other protected characteristic, but were instead based solely on legitimate, non-discriminatory business reasons and, as such, are not unlawful.

## EIGHTH DEFENSE

One or each of the named plaintiffs' individual claims (and those of the putative class) are barred in whole or in part by the doctrines of release, payment, accord and satisfaction, set off, acquiescence, waiver, estoppel, unclean hands and/or laches.

## NINTH DEFENSE

One or each of the named plaintiffs' claims (and those of the putative class) are barred in whole or in part by the applicable statutes of limitations.

## TENTH DEFENSE

Plaintiffs' claims (and those of the putative class) for punitive damages violate Johnson & Johnson's constitutional protection from, including without limitation,

excessive fines, cruel and unusual punishment, denial of due process, and denial of equal protection of the law.

### ELEVENTH DEFENSE

Plaintiffs' claims (and those of the putative class) for punitive damages are barred because Johnson & Johnson has a written policy in place that specifically prohibits discriminatory practices against employees.  Johnson & Johnson and its subsidiary companies have implemented this written policy in good faith.

### TWELFTH DEFENSE

To the extent the named plaintiffs (or the members of the putative class) have failed to mitigate any alleged damages, those damages must be reduced.

### THIRTEENTH DEFENSE

Plaintiffs lack standing to challenge any employment practices that did not affect them.

### FOURTEENTH DEFENSE

The class action allegations in the Second Amended Complaint are barred in that if this action is certified as a class action, Johnson & Johnson's rights under the Seventh Amendment to the United States Constitution would be violated.

### FIFTEENTH DEFENSE

Any claims for violation of the New Jersey Law Against Discrimination asserted on behalf of putative class members are barred to the extent such claims are asserted on behalf of employees or against employers not subject to that law.

### SIXTEENTH DEFENSE

The claims in the Second Amended Complaint under Title VII are barred to the extent the Second Amended Complaint alleges discriminatory conduct that was not

previously alleged in a timely administrative complaint filed with the EEOC, otherwise exceeds the scope of the charge of discrimination filed with the EEOC, or alleges claims against companies not identified in the charge of discrimination filed with the EEOC.

### SEVENTEENTH DEFENSE

The claims in the Second Amended Complaint under Title VII are barred to the extent that the Second Amended Complaint is based on conduct alleged to have occurred more than 300 days prior to the proper filing of a charge of discrimination with the EEOC raising such claim or claims.

### EIGHTEENTH DEFENSE

The claims of the Second Amended Complaint are barred in whole or in part by the doctrine of after-acquired evidence.

### NINETEENTH DEFENSE

The named plaintiffs may not join their claims in one action because they do not assert any right to relief in respect of or arising out of the same transaction or occurrences and there is no question of law or fact common to these plaintiffs that will arise in the action.

### TWENTIETH DEFENSE

Any claims under Title VII are barred to the extent they are based on notices that were issued less than 180 days after the charges were filed and were not issued in compliance with 42 U.S.C. § 2000e-5(f).

### TWENTY FIRST DEFENSE

The claims under the New Jersey Law Against Discrimination are barred by any administrative determination of the underlying charges.

## TWENTY SECOND DEFENSE

Plaintiffs are not entitled to a jury trial on an adverse impact claim under Title VII.

## TWENTY THIRD DEFENSE

Plaintiffs' claim for damages fails to the extent it seeks damages that are not permitted under Title VII.

WHEREFORE, defendant Johnson & Johnson requests judgment:

(a)     dismissing the Second Amended Complaint with prejudice;

(b)     awarding Johnson & Johnson the costs of the suit, including reasonable attorneys' fees and expenses; and

(c)     granting such other and further relief as the Court may deem just and proper.

Dated: June 17, 2005

Theodore V. Wells, Jr. (TW 2830)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**


**McELROY DEUTSCH MULVANEY &
CARPENTER LLP**


By: ___/s/ Francis X. Dee_____
          Francis X. Dee (FD 7739)


Donald R. Livingston
**AKIN GUMP STRAUSS HAUER & FELD, L.L.P.**


Nancy Rafuse
**ASHE RAFUSE & HILL LLP**