# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NILDA GUTIERREZ, et al.,<br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>JOHNSON & JOHNSON,<br><br>　　　　　Defendant. | Civil Action No. 01-5302 (WHW) |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION CONCERNING "INITIAL ASSIGNMENT"

Theodore V. Wells, Jr. (TW 2830)
Jeh Charles Johnson
Maria H. Keane
Melanie H. Stein
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Donald R. Livingston
**AKIN GUMP STRAUSS HAUER & FELD, L.L.P.**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000

Francis X. Dee (FD 7739)
Stephen F. Payerle
David B. Beal
**McELROY DEUTSCH MULVANEY & CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Nancy Rafuse
**ASHE RAFUSE & HILL LLP**
1355 Peachtree Street
Suite 500
Atlanta, GA 30309
(404) 253-6000

Barbara A. McCormick
**JOHNSON & JOHNSON**
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933
(732) 524-3758

Counsel for Defendant Johnson & Johnson

## Preliminary Statement

Plaintiffs' statistical experts find no difference between the starting salaries of African Americans, Hispanics and whites hired into the same job code at Johnson & Johnson companies. They also find no difference in starting salaries of African Americans, Hispanics and whites hired at the same job level. But rather than concede that Johnson & Johnson companies do not discriminate in initial compensation, as their own analyses indicate, plaintiffs' experts adopt implausible assumptions and disregard key information on employees to find a salary difference. Plaintiffs' experts' incorrect assumptions and omission of relevant information such as pre-J&J job experience and education specialization render their analysis of initial job assignments not probative.[1] Because that flawed analysis is plaintiffs' sole support for their initial compensation claim, plaintiffs' motion for class certification in respect of initial compensation must be denied.[2]

## PROCEDURAL HISTORY

### A. Plaintiffs Seek to Add an Initial Assignment Claim

Plaintiffs filed their motion for class certification on August 16, 2004, three months shy of the third anniversary of their complaint. In conjunction with their

---

[1] The methodological flaws in plaintiffs' experts' analysis are the subject of a separate *Daubert* motion filed on May 18, 2005 together with, and supported by, Johnson & Johnson's Memorandum in Opposition to Plaintiffs' Motion for Class Certification dated May 18, 2005 (revised and substituted September 20, 2005) ("Def's Main Brief").

[2] Plaintiffs' motion for class certification in respect of initial compensation must also be denied for failing to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure for the reasons discussed in Def's Main Brief.

1

motion for class certification, plaintiffs sought leave to amend their complaint, among other reasons, to add allegations of discrimination in initial job hire. Johnson & Johnson opposed the motion, arguing, among other things, that it was far too late into the case to add a hiring claim, and that, even if it were not, no named plaintiff had such a claim. On December 8, 2004, the Special Master denied plaintiffs' motion for leave to amend on the ground that no named plaintiff had an initial job hire claim.

In February 2005, plaintiffs filed another motion for leave to amend to add allegations of discrimination in initial job hire and a new named plaintiff who they asserted could adequately represent the class on the claim. Johnson & Johnson again opposed the motion, requesting additional time to respond in the event the Court allowed the claim.

### B. Special Master Finds Initial Assignment an Element of Plaintiffs' Compensation Claim

On April 18, 2005, the Special Master issued an Opinion and Order denying plaintiffs' motion, but finding that plaintiffs' claim of discrimination in initial assignment is an element of proof of plaintiffs' compensation claim, not an independent cause of action. At the same time, the Special Master denied Johnson & Johnson's request for additional time to respond.

### C. Johnson & Johnson Moves for Reargument

On May 2, 2005, Johnson & Johnson moved for reconsideration of the Special Master's April 18, 2005 decision finding plaintiffs' initial assignment claim a component of plaintiffs' initial compensation claim. Specifically, Johnson & Johnson requested that the Special Master either reverse his finding or, in the alternative,

permit Johnson & Johnson additional time to make a supplemental submission devoted solely to the initial assignment claim. In accordance with the case management plan and scheduling order, Johnson & Johnson filed its papers in opposition to class certification on May 18, 2005. Since plaintiffs' initial assignment claim was recognized to be part of the case only two weeks' earlier, Johnson & Johnson was not able to address the claim fully at that time.

In his report in support of Johnson & Johnson's opposition to class certification, Johnson & Johnson's statistical expert, Dr. David Wise, concluded that the initial job assignment analysis of plaintiffs' experts, Drs. Janice Madden and Alexander Vekker, was "disingenuous and uninformative" for purporting to analyze starting salaries without knowing who had applied for what jobs, the educational backgrounds of the candidates selected for particular positions, and the prior work experience of those selected (Def's Main Brief, App. B, Report of Dr. David Wise, dated May 10, 2005 ("Wise May 2005 Report") at 168–75). Dr. James Outtz, Johnson & Johnson's industrial organization expert, concluded that Drs. Madden and Vekker's initial assignment analysis is not relevant to the facts of this case in light of their failure to consider: the types of jobs applicants seek; the processes by which applicants are considered for specific jobs; the processes by which they are hired; how each candidate's education relates to the specific requirements of the position or positions for which he or she is being considered; which aspects of each candidate's work experience (if any) relate to the specific requirements of the position or positions for which he or she is being considered; and the match between the candidate's work expectations and the jobs for which he or she is being considered (Def's Main Brief,

App. C, Report of Dr. James Outtz, dated May 13, 2005 ("Outtz Report"), vol. 1 at 64-65).

### D. Special Master Grants Additional Time

On July 25, 2005, the Special Master issued an Opinion and Order denying Johnson & Johnson's motion for reargument but granting Johnson & Johnson 60 days to file a supplemental submission solely on the issue of discrimination in initial assignment. This memorandum and the accompanying expert report of Dr. David Wise, dated September 23, 2005, and titled "Job Assignment at J&J" ("Wise Sept. 2005 Report") is that submission.

## STATEMENT OF FACTS

### A. Data Produced in Discovery

During discovery Johnson & Johnson produced electronic data concerning employees of Johnson & Johnson companies from six human resources information systems, including the Johnson & Johnson Employee Management System ("JJEMS"), a transactional database used to maintain information on individual employees such as positions held over time, promotional and developmental moves, salary actions, and status; Talent Navigator, a tool provided to managers and employees to help recruit and develop talent internally; and Restrac, a computerized job posting and application system.

### B. Data Disregarded by Plaintiffs' Experts

Plaintiffs' experts' analysis of initial job assignment takes into account only limited data concerning individuals hired by Johnson & Johnson stored in JJEMS and Talent Navigator: age at time of hire; year of hire; basic level of educational

degree (*e.g.*, Bachelor's, Master's); function area (*e.g.*, Sales, Engineering, Finance, etc.); major subfunction (*e.g.*, Sales-Selling, Engineering-Generalist). The analysis does not include highly relevant information on pre-J&J job experience, pre-J&J job hierarchy, and educational experience (other than degree level) maintained in Talent Navigator and produced in discovery. It similarly fails to take into account relevant JJEMS data indicating the geographic location of employees. Furthermore, plaintiffs do not consider the wide variation of jobs (*e.g.*, entry level to director-level management or above) within a single function and subfunction. They compare the salaries of new hires within a function-subfunction group despite the fact that a single function-subfunction may include a wide range of jobs requiring different skills and experience and jobs with salaries that vary by a factor of six or more (Wise Sept. 2005 Report at 10-15).

### C.   Plaintiffs' Experts Find No Salary Differences Within Same Job Code or Hierarchy Level

Plaintiffs concede that there is no statistically significant difference between the starting salaries of African Americans, Hispanics and whites hired into the same job code, controlling for age, level of education and year of hire (*see* Plaintiffs' Brief in Support of Motion for Class Certification, App. A, Report of Dr. Janice Madden ("Madden/Vekker Report"), Tables 19a-c). They also concede that there is no statistically significant difference between the starting salaries of African Americans, Hispanics and whites hired into the same job function-subfunction, controlling for age, level of education, year of hire and job level, or hierarchy. *Id.* Only by unreasonably positing that people apply for jobs at Johnson &

Johnson companies without any concern for the level of jobs, and that people are hired into jobs without consideration of their prior job experience and education specialization, do plaintiffs' experts find statistically significant differences in starting salaries. *Id.*

### D. Pre-J&J Experience Explains Differences Reported by Plaintiffs

The differences in initial salaries reported by Drs. Madden and Vekker are explained by differences in the pre-J&J job experiences of African American, Hispanic and white new hires (Wise Sept. 2005 Report at 21-23). Specifically, when the hierarchy level of a person's last pre-J&J job and years of pre-J&J relevant experience are controlled for, there are no differences between the initial salaries of African American, Hispanic and white new hires. *Id.* This is consistent with the testimony of Johnson & Johnson human resource executives stating that candidates' education and experience are important factors in determining initial compensation (*see* Outtz Report, vol. 1 at 42-49 summarizing testimony of Johnson & Johnson executives set out in App. A to Def's Main Brief; *see also* App. A to Def's Main Brief, *i.e.*, Hanlin Decl. at ¶ 20; Jennings Decl. at ¶ 20; Monge Decl. at ¶ 22; Synder Decl. at ¶ 45; Ward Decl. at ¶ 43).

## ARGUMENT

### I.

### PLAINTIFFS' INITIAL ASSIGNMENT COMPENSATION ANALYSIS IS INADEQUATE

Statistical results based on implausible assumptions have no probative value. *Robertson v. Sikorsky Aircraft Corp.*, No. 397CV1216, 2000 WL 33381019, at

*3 (D. Conn July 5, 2001). Compensation analyses that omit crucial non-discriminatory variables which could (and do) account for reported salary differences among employee groups are equally worthless. *Jones* v. *GPU, Inc.*, No. 01-4950, 2005 WL 2108700, at *12 (E.D. Pa. Sept. 1, 2005); *Webb* v. *Merck*, 206 F.R.D. 399, 408 (E.D. Pa. 2002). Plaintiffs' experts' analysis of initial job assignments suffers both deficiencies.

First, in choosing not to control for job code, employee job title, or job hierarchy, Drs. Madden and Vekker implicitly assume that in the ordinary course people apply to Johnson & Johnson companies for jobs within very broad function-subfunction categories, not for specific positions, or even categories of positions within a particular job group or at a particular level. They also assume that new hires are "assigned" to jobs at the time of hire, rather than recruited and interviewed for specific positions, or categories of positions within a particular job group or at a particular level, based on minimum qualifications and job duties defined at the outset of the recruiting process. Documents and data produced in discovery,[3] and testimony of plaintiffs' own witnesses,[4] as well as J&J witnesses,[5] expose the fallacy of plaintiffs' experts' assumption. The record evidence indicates that applicants apply

---

[3] *See, e.g.*, "*Hire.com e-Recruiter User Guide*" set out as Exhibit 1 to the accompanying declaration of Melanie H. Stein dated September 23, 2005 ("Stein Decl."); requisition forms for postings of open positions at Ethicon, Stein Decl., Ex. 2.

[4] *See, e.g.*, Stein Decl., Exs. 5-9: Clarke Dep at 18:12-21; Gilpin Dep at 8:18-9:1; Harris Dep. at 69:12-70:8; Jones Dep at 26:21-28:20; Powell Dep. at 41:18-24.

[5] *See, e.g.*, Stein Decl., Ex. 3: Shigo Dep. at 13:20-14:25; 108:17-109:19.

for positions specified by pre-determined job needs and minimum qualifications. *See supra* notes 3-5. Job postings for Johnson & Johnson companies at www.jnj.com/careers indicate the same (Wise Sept. 2005 Report at 5-8).

Second, Drs. Madden and Vekker do not compare "comparably qualified" new hires as they claim. Most notably, they incorrectly assume that black, white and Hispanic employees who are hired into the same function and subfunction at the same age and with the same basic level of education have comparably the same education and experience. Dr. Madden testified that age, degree level, function and sub-function "characterize the experience" of candidates (Madden Dep. at 72:15-74:1; 386:12-387:1; 521:22-522:3; 524:9-525:4). She further testified that she "expected that there probably wasn't much variation" in the prior job experience of people who are the same age and employed by Johnson & Johnson companies within the same function and subfunction (Madden Dep. at 350:22-351:12). Data entered into Talent Navigator by employees, including putative class members, prove Madden's "expectations" wrong. As shown by Dr. Wise in his accompanying report, new hires in the same function-subfunction have a wide range of education specializations and pre-J&J job experiences (Wise Sept. 2005 Report at 17-21). Moreover, the average ratio of age to relevant experience of new hires within a particular function/subfunction (as reported by employees themselves) varies substantially by race and ethnicity (Wise Sept. 2005 Report at 15-17).

Third, Drs. Madden and Vekker do not compare the salaries of "comparably qualified" new hires by company. Nor do they adjust for geographic location. Rather, they aggregate the data of all the Johnson & Johnson companies and

location facilities as if they were one, assuming that the relationship between job experience and education and the salary of new hires is the same across all Johnson & Johnson companies and function-subfunction groups (Wise Sept. 2005 Report at 20). This methodology is improper in light of differences in salary variation within function-subfunction groups across companies and within a single company indicating that individual attributes, such as prior experience and education specialization, have different effects on salary depending on company and function – subfunction (*see* Wise Sept. 2005 Report at 20; *see also Carson* v. *Giant Food, Inc.*, 187 F. Supp. 2d 462, 471 n.8 (D. Md. 2002); *Abram* v. *UPS*, 200 F.R.D. 424, 431 (E.D. Wis. 2001)).

Drs. Madden and Vekker compare the starting salaries of blacks, whites and Hispanics hired into the same function-subfunction who are the same age and have the same basic level of education (*e.g.*, Bachelor's, Master's, PhD) across companies, and attribute any differences they find to discrimination, disregarding available data on pre-J&J job experience, education specialization, and geographic location that account for the differences they report (Madden/Vekker Report at 44-46). This flies in the face of the facts indicating the importance of education and prior experience in determining initial compensation (*see* Outtz Report, vol. 1 at 42-49; App. A to Def's Main Brief). Had Drs. Madden and Vekker considered the hierarchy level of employees' last pre-J&J job and years of pre-J&J relevant experience, they would have found no difference between the initial base salaries of African American, Hispanic and white new hires (Wise Sept. 2005 Report at 22-23), just as they found no difference when comparing people in the same job code and at the same job level (Madden/Vekker Report, Table 19).

9

Drs. Madden and Vekker's implausible assumptions and failure to account for key relevant and non-discriminatory variables such as pre-J&J job experience, education specialization and geographic location render their analysis insufficient to support class certification. *Cooper v. Southern Co.*, 390 F.3d 695, 718 (11th Cir. 2004) (affirming district court's conclusion that methodological deficiencies in a report prepared by Dr. Madden rendered her analysis insufficient to support class certification); *see also Jones,* 2005 WL 2108700, at *12 (denying class certification stating that "without factoring relevant variables into the [multiple regression compensation] analysis, the statistician leaves open the possibility that those variable, and not racial discrimination, produced differences between African-American [and Hispanic] and white employees."); *Webb v. Merck*, 206 F.R.D. at 408, n.2 (finding that since plaintiffs' "statistics do not account for non-discriminatory variables such as ... position grades" they are "not instructive or determinative"); Def's Main Brief at 44-53.

## II.

### PLAINTIFFS HAVE FAILED TO DEMONSTRATE A NEXUS BETWEEN THEIR INITIAL ASSIGNMENT ANALYSIS AND ANY HR PRACTICE

In addition to false assumptions and omitted variables, plaintiffs' statistical analysis of initial job assignment fails to identify an employment policy or practice that is the source of the excessively subjective decisionmaking that allegedly results in discrimination in initial compensation. In their report, Drs. Madden and Vekker do not discuss whether and to what extent job-related factors play a role in compensation setting at each company. Similarly, they fail to consider whether job-

related factors that play a role in compensation are the same or different at each company, and within a company, whether they are the same or different in each function-subfunction group.

Plaintiffs' brief in support of its class certification is equally silent. Plaintiffs fail to tie the statistical disparity in initial compensation reported by Drs. Madden and Vekker to an employment policy or practice <u>that</u> <u>is</u> <u>the</u> <u>source</u> of the excessively subjective decisionmaking they say causes discrimination. Plaintiffs have thus failed to meet their burden of demonstrating that subjective decisionmaking in initial assignment is common to the proposed class. *See Garcia* v. *Veneman*, 211 F.R.D. 15, 21 (D.D.C. 2002); *Webb* v. *Merck*, 206 F.R.D. 399, 408 n.2 (E.D. Pa. 2002); *see also* Def's Main Brief at 38-40.

## CONCLUSION

For the reasons discussed above, in the accompanying report of Dr. David Wise, and in Defendant's Main Brief, Johnson & Johnson respectfully requests that this Court deny plaintiffs' motion for class certification in respect of initial compensation.

Dated: September 23, 2005

/s/ Theodore V. Wells, Jr.

11

Theodore V. Wells, Jr. (TW 2830)
Jeh Charles Johnson
Maria H. Keane
Melanie H. Stein
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Donald R. Livingston
**AKIN GUMP STRAUSS HAUER
& FELD, L.L.P.**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000

Francis X. Dee (FD 7739)
Stephen F. Payerle
David B. Beal
**McELROY DEUTSCH
MULVANEY & CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Nancy Rafuse
**ASHE RAFUSE & HILL LLP**
1355 Peachtree Street
Suite 500
Atlanta, GA 30309
(404) 253-6000

Barbara A. McCormick
**JOHNSON & JOHNSON**
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933
(732) 524-3758

Counsel for Defendant Johnson & Johnson

12