# UNITED STATES DISTRICT COURT

District of New Jersey

| | |
|---|---|
| Chambers of<br>**William H. Walls**<br>District Judge<br>_____<br>(973) 645-2564<br>(973) 645-3436 Fax | Martin Luther King Jr.<br>Federal Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102 |

NOT FOR PUBLICATION

MEMORANDUM

ORIGINAL ON FILE WITH CLERK OF COURT

November 6, 2006

**Appearances:**

    Bennet Dann Zurofsky (Reitman Parsonett)
    Cyrus Mehri (Mehri & Skalet)
    Nicole M. Austin-Hillery (Mehri & Skalet)
    Pamela Coukos (Mehri & Skalet)
    Cameron Stewart (The Cochran Firm)
    Bruce Ludwig (Sheller, Ludwig, & Badey, PC)
    Jonathan Shub (Sheller, Ludwig, & Badey, PC)
    Scott George (Sheller, Ludwig, & Badey, PC)
        Attorneys for Plaintiffs

    Theodore Wells, Jr. (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)
    Jeh Charles Johnson (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)
    Maria H. Keane (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)
    Melanie H. Stein (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)
    Francis X. Dee (McElroy, Deutch, Mulvaney, & Carpenter, LLP)
    Stephen F. Pyerle (McElroy, Deutch, Mulvaney, & Carpenter, LLP)
    David B. Beal (McElroy, Deutch, Mulvaney, & Carpenter, LLP)
    Donald R. Livingston (Akin Gump Strauss Hauer & Feld, LLP)
    Nancy Rafuse (Ashe Rafuse & Hill LLP)
    Barbara A. McCormick (Johnson & Johnson)
        Attorneys for Defendant

Re: Nilda Gutierrez, Linda Morgan, Wayne Brown, & Krista Marshall v. Johnson & Johnson;
No. 01-5302 (WHW)
Defendant's Motion to Strike Export Report of Dr. Janice Madden & Dr. Alexander Vekker; Plaintiffs' Motion to Strike Expert Report of Dr. David Wise

Dear Counsel:

This matter is before the Court on Defendant Johnson & Johnson's motion to strike the report of Dr. Janice Madden and Dr. Alexander Vekker, and Plaintiffs' motion to strike the report of Dr. David Wise. These motions relate to Plaintiffs' pending motion for class certification. The court heard oral argument on both motions to strike on October 17, 2006. Defendant's motion to strike is denied. Plaintiffs' motion to strike is denied.

## FACTS AND PROCEDURAL BACKGROUND

On November 15, 2001, Plaintiffs Nilda Gutierrez, Linda Morgan, Wayne Brown, and Krista Marshall filed an employment discrimination suit on behalf of themselves and other similarly situated employees against Johnson & Johnson pursuant to Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J. Stat. § 10:5-1 et seq. Plaintiffs have since filed an amended complaint and a second amended complaint.

Johnson & Johnson is a multi-national conglomerate of consumer and healthcare companies, thirty-four of which are U.S. companies. The named plaintiffs are former and current employees of Johnson & Johnson. Three are African American and one is Hispanic. Plaintiffs

allege that they were underpaid relative to comparable Caucasian employees and denied promotions on account of race and ethnicity. Plaintiffs allege both intentional discrimination in violation of Section 1981, Title VII, and N.J. Stat. § 10:5-1 et seq., as well as racially disparate impact in violation of Title VII and N.J. Stat. § 10:5-1.

On September 27, 2004, Plaintiffs filed a motion for class certification and asked this Court to certify the following class of approximately 8,600 class members:

> all persons of African and/or Hispanic descent employed by defendant Johnson & Johnson in any permanent salaried positions (exempt or non-exempt) in the United States at any time from November 15, 1997 to the present.

Second Amended Compl. ¶ 25. Plaintiffs' brief relies in part on an expert statistical report, prepared by Dr. Janice Madden and Dr. Alexander Vekker ("Madden Report") to support Plaintiffs' claim of commonality.[1] Defendants opposition brief to class certification relies in part on an expert statistical report prepared by Dr. David Wise ("Wise Report") to show that there is no commonality among the class. On May 18, 2005, Defendant filed a motion to strike the Madden Report. Plaintiffs in turn filed a motion to strike the Wise Report. The two motions to strike are before the Court.

## STANDARD

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a

---

[1] To satisfy the prerequisites for class certification, Plaintiffs must prove numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Third Circuit has said that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

"The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology. . . . The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.'" Oddi v. Ford Motor Co. 234 F.3d 136, 145-46 (3d Cir. 2000) (quoting Kannankeril v. Terminix International Inc., 128 F.3d 802, 806 (3d Cir. 1997)). In exercising its "gatekeeper" function under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1992), the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Many courts have held that a full review of expert testimony under the Daubert standard is inappropriate at the class certification stage. In In re Visa Check/ Master Money Anti-trust Litig., the Second Circuit stated that the role of the district court is to ensure that the "basis of the opinion is not so flawed that it would be inadmissible as a matter of law." 280 F.3d 124, 135 (2d

Cir. 2001). A number of district courts have followed in suit and applied a more limited review of expert testimony in the context of class certification. See, e.g., Arnold v. Cargill, 01-cv-2086, 2006 WL 1716221, *5 (D. Minn. 2006) ("The application of the Daubert test [] is somewhat limited at the stage of class certification"); Anderson v. Boeing Co., 222 F.R.D. 521, 527 (N.D. Okla. 2004) (in the context of class certification, the court will not apply Daubert but will review analyses to "determine whether they are so fatally flawed as to be inadmissible as a matter of law"); Thomas & Thomas Rodmakers v. Newport Adh. & Comp., 209 F.D.R. 159, 162 (C.D. Cal. 2002) (lower Daubert standard is applied at class certification stage).

The rationale for a lower threshold for expert testimony at the class certification stage is that Daubert articulated "the standard for admitting expert scientific testimony in a federal trial." 509 U.S. at 582 (emphasis added). The Daubert inquiry was designed to shield the fact finder from flawed evidence. As one Eastern District of New York judge noted, in the preliminary stage of class certification, the court is "very far from the 'trier of fact' contemplated by Rule 702." In re visa Check/Master Money Anti-trust Litig., 192 F.R.D. 68, 76 (E.D.N.Y 2000). In fact, a trial judge is expressly forbidden from engaging in a "preliminary inquiry into the merits" of the case. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). Therefore, any Daubert inquiry is a limited one, tailored to the purpose for which the evidence is offered – to determine whether the requisites of Rule 23 have been met. In re Visa Check/Master Money Anti-trust Litig., 192 F.R.D. at 76.

Our Third Circuit has not yet ruled on the appropriate level of review for the admissibility of expert testimony in class certification hearings. However, this Court finds the reasoning of the

Second Circuit and the courts which have followed its lead to be sound and appropriate. Accordingly, this Court reviews the Madden Report and the Wise Report to ensure that they are not so fatally flawed to be inadmissible as a matter of law.

## DISCUSSION

**I. The Madden Report**

Plaintiffs offer the Madden Report in support of their motion for Class Certification.[2] Specifically, Plaintiffs asked Dr. Madden to analyze "whether the selections of employees for promotions, the awarding of employee compensation, and the setting of initial job assignments are racially and ethnically neutral" and, if there are disparities, whether they exist throughout Johnson & Johnson. Madden Rpt. 1. Dr. Madden analyzed data provided by Johnson & Johnson of over 50,000 employees to compare employment outcomes for African American, Hispanic, and white employees. The Madden Report analyzes whether there are systemic differences in promotions, compensation, or initial job assignment by race and ethnicity for employees with equivalent credentials. Dr. Madden used linear regression to analyze pay disparities and multiple pools analysis and probit regression for promotion analysis. The Madden Report concluded that from 1997 to 2003: (1) African American employees were less likely than comparably qualified white employees to be selected for promotion, (2) African Americans and Hispanics had lower base salaries than comparably qualified whites, and (3) there was an average wage differential at

---

[2]Dr. Janice Madden is a labor economist with a Ph.D. in economics from Duke University. She is currently a professor at the University of Pennsylvania and has published widely on the effects of race and gender on labor market outcomes.

hire by race and ethnicity.

The qualifications of Dr. Madden are not in dispute. Nor is the reliability of linear regression, multiples pools analysis, or probit regression as methodologies in question. Rather, the core of Defendant's argument is that it was inappropriate for Dr. Madden to aggregate the data from Johnson & Johnson's thirty-four companies because they are geographically and functionally diverse and do not share common employment practices or procedures. Specifically, Defendants argue: (1) the Madden Report is irrelevant to class certification and therefore "unfit" under Daubert and (2) the Madden Report is unreliable.

A. Relevance of the Madden Report

On the first point, Defendant argues that the Madden Report is irrelevant because it addresses the wrong question. According to Defendant, the relevant question in class certification is "whether the members of plaintiffs' proposed class, who were employed at more than 30 different Johnson & Johnson subsidiaries in the United States during the class period, were subject to common HR practices resulting in a pattern of statistical differences adverse to them." Def. Mot. to Strike 1. Defendant argues that the Madden Report does not address whether employment practices and outcomes have a common or determinable pattern across Johnson & Johnson but instead incorrectly assumes that employees of the Johnson & Johnson companies were subject to the same compensation and promotion practices. The Madden Report aggregates data from over thirty functionally and geographically diverse companies and reports average aggregate differences in compensation and promotion between minorities and non-minorities. Defendant argues that Dr. Madden fails to demonstrate that her reported aggregate

7

average differences stem from common employment practices. Therefore, her report is irrelevant to a determination of commonality, according to Defendant.

Defendant is correct in noting that to prove commonality for class certification, Plaintiffs will have to show that there was a companywide policy or practice of discrimination at the Johnson & Johnson companies that affected the aggrieved class. General Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 157-58 (1982); Reap v. Continental Casualty Co., 199 F.R.D. 536, 544 (D.N.J. 2001). However, it is important to recognize that Plaintiffs' Motion for Class Certification does not rely on the Madden Report to show common practice but to show common effect. In their Motion for Class Certification, Plaintiffs point to Johnson & Johnson's Corporate Credo, its Board of Directors, and Company-wide human resources policies and data to argue that Johnson & Johnson is a singular entity that can enforce policy across the corporation. Plaintiffs proceed on a theory that Johnson & Johnson's delegation of excessive discretion in employment practices has resulted in widespread discrimination.[3] Whether Plaintiffs' evidence is sufficient to establish commonality will be determined at the class certification hearing.

Some courts have permitted aggregated analyses in cases alleging subjective decision-making as the common policy. In Dukes v. Wal-Mart Stores, Inc., an employment discrimination

---

[3] Although, proving that the grant of discretionary authority results in a pattern and practice of discrimination is extremely difficult, some courts have found that discrimination claims against excessively subjective employment practices satisfy the commonality requirement. See Caridad v. North-Metro Commuter R.R., 191 F.3d 283, 292-93 (2d Cir. 1999); Dukes v. Wal-Mart Stores, Inc., 222 F.R.D 137, 149-50 (N.D. Cal. 2004).

case brought against Wal-Mart, defendant challenged plaintiff's expert report because the analyses were conducted at the regional level rather than the store level (or store department level) and consequently failed to take into account the significant differences in compensation practices that existed among the stores. 222 F.R.D. 137, 156 (N.D. Cal. 2004). The court recognized that whether workforce statistics are more properly analyzed at a macro or micro level depends on the similarity of employment practices. Id. (citing Kirkland v. New York State Dep't of Correctional Servs., 520 F.2d 420, 425 (2d Cir. 1975)). However, the court there determined that the relevant inquiry was not which method is best but instead:

> whether a particular level of generalization should be declared the only legally relevant focal point for statistical analysis, or whether statistical results may be presented at various levels of generality or specificity with the ultimate determination being made after all the evidence is evaluated by the finder of fact.

Id. at 158. The California court concluded that defendant's objection went to the report's probative value. Whether subjective decision-making contributed to a pattern of nationwide discrimination was for a jury to decide. Id. at 159. The court admitted the report for the purpose of the class certification hearing because it was at least a "reasonable means of conducing statistical analysis." Id. at 159.

The issue before this Court is not whether the Madden Report demonstrates commonality; the issue is whether the Court may consider the Madden Report in determining whether there are sufficient common issues of law and fact to support class certification. Although the Madden Report alone does not establish commonality, Dr. Madden's aggregated analysis may be highly

9

relevant in together with other evidence tending to show a pattern and practice of discrimination.[4] The Court finds that Dr. Madden's use of aggregation is not so fatally flawed to be inadmissible as a matter of law. The limitations of her approach can be addressed on cross examination.

2. Reliability of the Madden Report

Defendant contends that the Madden Report is unreliable because: 1) it distorts the Johnson & Johnson data through improper aggregation and 2) the analysis omits key variables. Defendant claims aggregation was improper because Dr. Madden failed to first investigate whether the companies were similarly homogenous to make aggregation appropriate. Defendant directs the Court's attention to a reference book on statistics which explains: "[u]nless the source material is fairly homogenous, aggregation can distort patterns in the data." David H. Kaye & David A. Freedman, Reference Guide on Statistics, in Reference Manual on Scientific Evidence 109 (2000). According to Dr. Wise, the factors that influence compensation and promotion at each company are different. Given the different purposes and different workforces of Johnson & Johnson's companies, Defendant maintains it was inappropriate to aggregate the data.

Finally, Defendant argues that the Madden Report omits key relevant variables despite the fact that such information was available in the data set. In particular, Dr. Madden excludes

---

[4]Defendant cites Gosho v. U.S. Bancorp Piper Jaffray, Inc., a non-binding slip opinion from another district, in support of its argument that the Madden Report is irrelevant to the issue of commonality. No 01-cv-02086-DWF-AJB slip op. at 5 (N.D. Cal. Oct. 1, 2002) (striking an aggregated statistical report prepared by Dr. Madden on the grounds that it was irrelevant). However, the Court finds the opinion unpersuasive because it did not take into account the relevance of an aggregated report in conjunction with other evidence tending to show common policies or practices.

relative time in job[5], work location, pre-Johnson & Johnson work experience,[6] and information concerning performance. Significantly, the Madden Report does not distinguish between high performers and low performers despite the fact that performance is a basic criterion which employers use in employment decisions.[7] Her report also fails to compare similarly situated employees performing the same job and sharing the same job title.[8] Therefore, Defendant argues, the Madden Report should be stricken.

The Court is unpersuaded that Dr. Madden's choice of variables renders her analysis so fatally flawed that it should be stricken as a matter of law. Generally, decisions regarding what control variables to include in an expert report go to weight, not admissibility. The Supreme Court has observed: "Normally, failure to include variables will affect the analysis' probativeness, not admissibility." P.E. Bazemore v. Friday, 478 U.S. 385 (1986) (per curiam) (holding that an appropriate regression of salary need not include all measurable variables that

---

[5] The Madden Report controls for the number of years at Johnson & Johnson but does not distinguish between an employee who has worked his way up the corporate ladder and an employee who was hired in a managerial capacity.

[6] The Madden Report uses age as a proxy for experience.

[7] Defendant has directed the Court's attention to Cooper v. Southern Company, a case in which both the district court and the Eleventh Circuit criticized a report prepared by Dr. Madden for not including a performance variable. 205 F.R.D. 596, 613-14 (11th Cir. 2001). However, in that case, the court was not ruling on a motion to strike but on a motion for class certification.

[8] Dr. Madden instead controlled for differences in jobs according to job function, job major subfunction, and job hierarchy, as defined by Johnson & Johnson. These distinctions are less specific than "job title." A supervisor and assistant supervisor may both be classified together despite the fact that common sense tells us that a supervisor should earn more money than an assistant supervisor.

have an effect on salary level to be admissible).  It is only the rare case where the "regressions are so incomplete as to be irrelevant" and the expert's decisions regarding control variables are the basis to exclude the analysis.  Id. at 399, n.10.  As example, the Ninth Circuit in Hemmings v. Tidyman's, Inc. has held that a regression was admissible in an employment discrimination case despite the fact that it did not control for preferences, individual qualifications, or education. 285 F.3d 1174, 1189 (9th Cir. 2002).  Since the expert accounted for experience and seniority within the company and tracked the employees over time, the data was not so incomplete to be rendered irrelevant and any inadequacies in the methodology could be addressed in cross-examination.  Id.

Dr. Madden exercised professional judgment in deciding what control variables to include in her analysis.  In her Rebuttal Report, she explains that too many controls relative to the number of minority employees decreases the power of the test and makes the results less precise. Madden Rebuttal Rpt. 3.  Furthermore, Dr. Madden explains that she specifically chose not to include performance in her analyses because performance reviews were under the control of Johnson & Johnson and may incorporate discrimination rather than providing a neutral measure of productivity.  Id. at 6-7.

In light of the fact that the Madden Report controls for job hierarchy, job function, age, tenure at Johnson & Johnson, and education, the Court does not find Dr. Madden's regressions to be so incomplete that they are unreliable or irrelevant.  The Madden Report certainly is not so fatally flawed to be inadmissible as a matter of law.  Defendant can seek to highlight its shortcomings on cross-examination.

**2. The Wise Report**

Defendant submits the Wise Report to support its contention that the Johnson & Johnson companies are not a single class environment for the purpose of class certification.[9] In his report, Dr. Wise purports to address two questions: (1) whether the data show a common pattern of compensation and promotion differences consistently adverse to African American or Hispanic employees, and (2) whether the many Johnson & Johnson companies operate as one company or whether the determinants of compensation and promotion differ from company to company. He refers to these questions as the "commonality question."

Dr. Wise examined the data company by company. Within a company, he estimated the difference between the compensation and promotion outcomes of minority and white employees who have the "same" job and "same" tasks. He also analyzed whether promotion and compensation outcomes were consistently adverse to minorities from year to year. He compared whether the "minority effect" (difference between minority and white employees) on base salary, non-salary compensation, direct compensation, and promotion was consistent at the different Johnson & Johnson companies as well as whether the minority effect was consistent over time. Finally, Dr. Wise considered whether the determinants of compensation and promotion, i.e., years in service, time in job, and employee performance rating, were the same from company to company.

The Wise Report concluded: (1) there is no common pattern of compensation and

---

[9]Dr. David Wise is an economist at Harvard University and holds the Stambaugh Professor of Political Economy chair at the John F. Kennedy School of Government.

promotion consistently adverse to African American and Hispanic employees, (2) the data are inconsistent with the assumption that the determinants of compensation and promotion are the same at all Johnson & Johnson companies, (3) few of the estimated minority effects are statistically different than zero, and (4) to the extent that there are differences in compensation and promotion, they are small and can be explained by small differences between the job-related attributes of minority and white employees.

Plaintiffs' make two broad arguments to strike the Wise Report: 1) Dr. Wise's commonality assessment relies on a novel, untested, and unreliable test manufactured for litigation and 2) Dr. Wise's fragmented analysis and use of excessive controls weakens the power of the analysis.[10]  The Court addresses each argument in turn.

1.  Dr. Wise's "Commonality" Test

Plaintiffs argue that Dr. Wise's commonality test is both inconsistent with economics research and irrelevant to the legal doctrine of commonality.  Dr. Wise admitted in his deposition that he had never performed a similar test and was unable to identify an other instance of his commonality test being deployed to study discrimination by a statistician or economist in the peer-reviewed literature.  Wise Dep. At 73-74; 88-89.  Plaintiffs argue that the Wise Report fails under even a more limited Daubert standard because Dr. Wise's technique has not been

---

[10] The Court notes that there were several other arguments raised in Plaintiffs' brief but not argued at the hearing.  Plaintiffs challenge Dr. Wise's presentation of his results and the assumptions he made to explain away any disparities he uncovered.  However, these arguments go to weight, not admissibility and are the sort of "statistical dueling" that is inappropriate at the class certification stage.  Caridad, 191 F.3d at 292.

14

subjected to peer review and publication, nor had it gained general acceptance in the relevant scientific community.

  Plaintiffs maintain that Dr. Wise's analyses do not tell us anything about the <u>legal</u> concept of commonality. Plaintiffs challenge Dr. Wise's definition of commonality as a common pattern "consistently adverse" to minorities from year to year and suggest that the test Dr. Wise constructed creates too high a burden. Dr. Wise used an f-test which is a standard equality test to test a true/false question. Plaintiffs do not challenge the reliability of the f-test but rather the use of the test in the context of demonstrating commonality. Dr. Wise's f-test asks whether the thirty-four race and ethnicity coefficients of each company are equal to one another in a particular year. According to Plaintiffs, if the coefficients are not equal, there is no "commonality" as defined by Dr. Wise. Even if the majority of the companies had substantial minority effects, the f-test could fail and Dr. Wise would conclude that there is no common pattern "consistently adverse" to minorities. Plaintiffs contend that in the real world, there will never be perfect uniformity from company to company, but this reality does not preclude a finding of commonality. In essence, Plaintiffs argue that Dr. Wise tests for uniformity, a concept different from a "pattern and practice of discrimination" or from Rule 23 commonality.

  Plaintiffs also argue that testing to determine whether the determinants of compensation and promotion differ from company to company does not answer the question of whether the Johnson & Johnson business units operate as one company. As Dr. Madden points out in her Rebuttal Report, the determinants of compensation and promotions could differ across business units for reasons having nothing to do with whether Johnson & Johnson operates as one

15

company.

Additionally, at the hearing, Plaintiffs challenged Dr. Wise's use of the linear probability model to evaluate statistically racial differences in promotions. Although the linear probability model is an accepted statistical test, Dr. Madden argues that no one uses it without comparing it to a logit/probit analysis. Plaintiffs contend that the results of Dr. Wise's analysis, in isolation, are meaningless.

Plaintiffs raise some serious limitations to Dr. Wise's approach. However, the Court is mindful that under Daubert, a court is directed to focus on principles and methodology, not on the conclusions they generate. Daubert, 509 U.S. at 595. Plaintiffs do not dispute the validity of the statistical tests Dr. Wise performed, nor could they. As Nobel Laureate Dr. Daniel McFadden stated in his declaration, the Chow test, fixed effects models, f-tests, and t-tests are all standard, peer-reviewed tests with acknowledged reliability. Daniel McFadden Decl. ¶¶ 12, 17, 19(2). Rather, Plaintiffs challenge Dr. Wise's interpretation of the results as they relate to the legal concept of commonality. However, disagreements about the conclusions to be drawn from a particular test affect the weight of a report, not its admissibility. See In re Diet Drugs (Phentermine Fenfluramine, Exfenfluramine) Prods. Liab. Litig., No. MDL-1203, 2000 WL 962535, *13 (E.D. Pa. 2000) (stating that where experts disagree about "interpretations of the [] studies, that goes more to weight of the evidence than to reliability for Daubert purposes"). Plaintiffs' concerns about the significance or lack of significance of the Wise Report can be adequately addressed through cross-examination.

  2. Disaggregation and Use of Control Variables

Plaintiffs maintain that Dr. Wise's disaggregate approach and use of numerous control variables minimizes the statistical significance of his calculations concerning minority effects. As a result of performing thirty-four separate analyses (one for each company), using such fine gradations of "same job," and having so many controls, the number of minorities in his separate analyses was often very low, thereby decreasing the statistical power of his analyses. Plaintiffs contend that fragmentation increases the standard error and decreases the precision with which Dr. Wise can measure the minority effect. Additionally, Plaintiffs argue that in deciding what control variables to include, Dr. Wise made choices designed to understate potential discrimination. As example, Dr. Wise controlled for performance based on performance reviews even though white raters consistently rated white employees higher than minority employees. Therefore, Plaintiffs suggest that performance is a tainted variable which taints the report.

The Court recognizes that Dr. Wise's decision to disaggregate the data and use numerous control variables may well have decreased the statistical power of his analysis. However, the choice of whether to aggregate or disaggregate data is a matter of professional scientific judgment. Dr. Wise had a reasonable basis for doing a company-by company analysis. In his professional opinion, the workforces of the different Johnson & Johnson companies were not sufficiently homogenous to make aggregation of data appropriate. Dr. Wise tested for minority effects on a company-by-company basis. As discussed, whether employment statistics are more properly analyzed at a macro or micro level affects the weight of the report. Dr. Wise's decision to disaggregate the data is an insufficient basis to strike an expert report at the class certification stage. Similarly, the choice of variables affects the probativeness of an expert report, not its

17

admissibility.  See Bazemore, 478 U.S. at 400 (1986).  Any limitations of the Wise Report can be addressed on cross-examination and the Court can give appropriate weight to the report in ruling on class certification.  The Court concludes that the Wise Report is not so fatally flawed to be inadmissible as a matter of law.

## CONCLUSION

Defendant's motion to strike the expert report of Dr. Janice Madden and Dr. Alexander Vekker is denied.  Plaintiffs' motion to strike the expert report of Dr. David Wise is denied.

s/ William H. Walls

**William H. Walls, U.S.D.J.**