**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NILDA GUTIERREZ, LINDA MORGAN, WAYNE BROWN, & KRISTA MARSHALL | : : : : | **OPINION** |
| Plaintiffs, | : : | Civil Action No. 01-5302 (WHW) |
| v. | : : | |
| JOHNSON & JOHNSON, | : : | |
| Defendant. | : : | |

**<u>Walls, Senior District Judge</u>**

Plaintiffs move for class certification.  They are four, African American and Hispanic former employees of Johnson & Johnson who allege that they were discriminated against on account of their race by Johnson & Johnson's excessively subjective compensation and promotion practices.  The Plaintiffs ask this Court to certify a class of approximately 8,600 class members of African and/or Hispanic descent employed by Johnson & Johnson in its thirty-five operating companies in any permanent salaried exempt or non-exempt position in the United States from November 15, 1997 to the present.

The motion has been extensively briefed and orally argued.  Both parties have submitted voluminous exhibits to the Court in support of their positions.   After careful consideration, the Court concludes that Plaintiffs fail to meet their burden to demonstrate commonality, typicality, and adequacy.  Accordingly, their motion for class certification is denied.

**FOR PUBLICATION**

**FACTUAL BACKGROUND**

Defendant Johnson & Johnson is a multi-national conglomerate of consumer and healthcare companies, thirty-five of which are U.S. companies.  Although popularly known for its consumer products such as baby powder and band-aids, Johnson & Johnson includes medical device companies that market joint implants and surgical instruments, diagnostic companies which provide laboratory testing equipment and software, and pharmaceutical companies that develop and sell prescription drugs.  Johnson & Johnson has employees in positions such as clerical staff, sales representatives, biochemists, engineers, research scientists, physicians, lawyers, and computer specialists.

Johnson & Johnson Corporate is headquartered in New Brunswick, New Jersey.  The Defendant has a decentralized management framework.  Corporate headquarters sets general guidelines; each of the thirty-five operating companies is responsible for running its own business operations on a day-to-day basis and for managing its personnel.  At the corporate level, Johnson & Johnson has a board of directors and a ten member Executive Committee.  Johnson & Johnson maintains a Corporate Credo which expresses the Company's philosophy as to how it wishes to conduct business.  The Credo states that "Compensation must be fair and adequate. . . .There must be equal opportunity for employment development [a]nd advancement for the qualified."  The Credo is displayed on a large stone plaque at corporate headquarters, in Johnson & Johnson's annual reports, on the corporate webpage, and in offices throughout the organization.

Corporate headquarters maintains a Compensation and Benefits Committee, a

-2-

FOR PUBLICATION

Management Compensation Committee, and Worldwide Compensation Resources.  It offers the

operating companies resources such as training, software, and planning tools.  Corporate

headquarters issues employment guidelines to the companies regarding compensation,

promotion, and performance evaluation systems.  However, these guidelines are implemented

differently by the human resources departments of each of the operating companies, resulting in

significant differences in employment practices.

At the subsidiary level, each operating company has its own headquarters and operational

facilities, as well as its own senior management.  The senior management is responsible for all

aspects of the business entity, including compliance with laws and regulations.   Each operating

company has an independent human resources organization which operationalizes guidelines

from Johnson & Johnson Corporate and develops employment policies and practices for the

company.  As example, if Johnson & Johnson Corporate sets the range of bonuses, it is up to

each operating company to determine the criteria for awarding bonuses.  Each operating company

also has an EEOC officer and is responsible for satisfying its own affirmative action plans and

goals.  It is only with respect to top level positions at the operating companies that Johnson &

Johnson Corporate personnel are involved in decision-making processes related to hiring,

promotion, evaluation, compensation, and succession planning.

Plaintiffs, Nilda Gutierrez, Linda Morgan, Wayne Brown, and Krista Marshall

("Plaintiffs"), are former Johnson & Johnson employees of African American and Hispanic

descent.  Plaintiffs allege they were underpaid relative to comparable Caucasian employees and

denied promotions on account of race and ethnicity.  Plaintiffs' Complaint alleges that common

**FOR PUBLICATION**

employment policies, adopted by Johnson & Johnson senior management, permit unmonitored

managerial discretion as a regular component of pay and promotion decisions.  According to

Plaintiffs, excessively subjective employment practices have led to gross disparities in pay and

promotion.  Plaintiffs allege that these violations are systemic and constitute a pattern and

practice that permeates Johnson & Johnson's domestic operations.

**PROCEDURAL HISTORY**

On November 15, 2001, Plaintiffs filed an employment discrimination suit on behalf of

themselves and other similarly situated employees against Johnson & Johnson pursuant to

Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42

U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of

1991, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J. Stat. §

10:5-1 et seq.  Plaintiffs allege both disparate treatment (pattern or practice) and disparate

impact.  Plaintiffs have subsequently filed an amended complaint and a second amended

complaint.

After conducting extensive discovery, Plaintiffs filed a motion for class certification on

September 27, 2004 and asked this Court to certify the following class of approximately 8,600

class members:

> All persons of African and/or Hispanic descent employed by defendant
> Johnson & Johnson in any permanent salaried exempt or non-exempt
> position in the United States from November 15, 1997 to the present.

Both parties then moved to strike the expert statistical report of their adversary.  On

November 6, 2006, this Court denied Plaintiffs' motion to strike the expert report of Dr. David

-4-

**FOR PUBLICATION**

Wise ("Wise Report") and Defendant's motion to strike the expert report of Drs. Madden &

Vekker ("Madden Report").  <u>Gutierrez v. Johnson & Johnson</u>, 01-cv-5302, 2006 WL 3246605

(D.N.J. Nov. 6, 2006).  The Court heard oral argument on the motion for class certification on

December 5, 2006.

**STANDARDS**

**Class Certification –  Fed R. Civ. P. 23(a) & 23(b)**

          To obtain class action certification, Plaintiffs must establish that all four prerequisites of

Fed. R. Civ. P. 23(a) are met as well as at least one part of Fed. R. Civ. P. 23(b).  <u>Baby Neal v.</u>

<u>Kanter</u>, 43 F.3d 48, 55 (3d Cir. 1994).  Rule 23(a) requires a showing of (1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy of representation.  <u>See</u> Fed. R. Civ. P. 23(a).[1]  If

these requirements are satisfied, the court must also find the that the class action is maintainable

under one of the subsections of Rule 23(b), the second and third of which are pertinent to this

case.  Rule 23(b) provides that an action may be maintained as a class action where:

> (2) the party opposing the class has acted or refused to act on grounds
> generally applicable to the class, thereby making appropriate final
> injunctive relief or corresponding declaratory relief with respect to the

---

[1]Rule 23(a) states:
> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the class is so
> numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to all of the class, (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

**FOR PUBLICATION**

class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

Over thirty years ago in Eisen v. Carlisle & Jaquelin, the Supreme Court cautioned

against conducting a preliminary inquiry into the merits of the case in determining whether an

action may be maintained as a class action. 417 U.S. 156, 177 (1974). However, in later cases,

the Supreme Court has moved away from its bright-line declaration and recognized that the court

may sometimes need to look beyond the pleadings to determine if the requisites for class

certification are met. In Coopers & Librand v. Lindsey, the Court noted that "[e]valuation of

many of the questions entering into determination of class action questions is intimately involved

with the merits of the claims." 437 U.S. 463, 469, n.12. Similarly, in General Tel. Co. of

Southwest v. Falcon, the Supreme Court observed:

Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim and sometimes it is necessary to probe beyond the pleadings before coming to rest on the certification question. . . [A]ctual, not presumed conformance with Rule 23(a) remains. . . indispensable."

**FOR PUBLICATION**

457 U.S. 147, 160 (1982).

The Third Circuit has likewise recognized that "a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action.  Newton v. Lynch, 259 F.3d 154, 166 (3d Cir. 2001); see also, Johnston v. HBO Film Mgt., Inc., 265 F.3d 178 (3d Cir. 2001) (concluding that where allegations in a complaint are unsupported or rebutted, the court may look beyond the face of the complaint).  This is such a case.  Accordingly, this Court will "probe beyond the surface of plaintiffs' allegations" to determine whether Plaintiffs' claims of employment discrimination satisfy the requirements of Fed. R. Civ. P. 23.  Newton, 259 F.3d at 166.

Plaintiffs cite Chiang v. Veneman for the proposition that the substantive allegations of the complaint must be taken as true at the class certification stage.  385 F.3d 256, 262 (3d Cir. 2004) (citing Eisen, 417 U.S. at 177-78).  However, since Chiang did not consider later cases which relaxed the bright-light declaration in Eisen, the Court will follow Newton and Johnston, where the Third Circuit conducted a lengthy review of Supreme Court precedent and concluded that it is sometimes necessary to probe the merits of the allegations supporting class certification.

**DISCUSSION**

**I. Fed. R. Civ. P. 23(a)**

    **A. Numerosity**

Records produced by Defendant indicate that the proposed class encompasses approximately 8,600 current and former employees, clearly establishing numerosity.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("if the named plaintiff demonstrates that the

**FOR PUBLICATION**

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"). Defendant does not contest that Plaintiffs have established numerosity.

### B. Commonality and Typicality

In class certification analyses, the "commonality and typicality requirements tend to merge." Falcon, 457 U.S. at 158, n.13.  As the Supreme Court stated, "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. Accordingly, the Court will consider commonality and typicality together.  See Reap v. Continental Casualty Co., 199 F.R.D. 536 (D.N.J. 2001) (analyzing commonality and typicality together); Webb v. Merck & Co., 206 F.R.D. 399 (E.D. Pa. 2002) (same).

The commonality requirement is satisfied if "the named plaintiffs share at least one question of law or fact with the grievances of the prospective class."  Baby Neal, 43 F.3d at 56. In the context of employment discrimination claims under Title VII, "plaintiffs must make a significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the employer's challenged employment decisions."  Garcia v. Veneman, 211 F.R.D. at 18 (D.D.C. 2002) (quoting Hartman v. Duffey, 19 F.3d 1459, 1472 (D.C. Cir. 1994) (emphasis added)).  In Falcon, the Supreme Court rejected the "across the board rule" that racial discrimination is by definition class discrimination.  Falcon, 457 U.S. at 157.  The Court made clear that the allegation that discrimination has occurred does not determine whether a class action may be maintained in accordance with Rule 23.  Id.  The

**FOR PUBLICATION**

Supreme Court advised:

> Conceptually, there is a wide gap between (a) an individual's claim that he
> has been denied a promotion on discriminatory grounds, and his otherwise
> unsupported allegations that the company had a policy of discrimination,
> and (b) the existence of a class of persons who have suffered the same
> injury as that individual, such that the individual's claim and the class
> claims will share common questions of law or fact and that the
> individual's claim will be typical of the class claims.

Id. at 157.  To establish commonality, Plaintiffs must show that there was a companywide

policy or practice of discrimination at the Johnson & Johnson companies that was

common to the aggrieved class.

Plaintiffs do not challenge an express policy of Johnson & Johnson Corporate.

Nor do they dispute that the employment policies and practices varied widely from

operating company to company.  Rather, Plaintiffs' theory of commonality is that

Johnson & Johnson's policy of delegating discretion to the operating companies to

implement general employment guidelines resulted in excessively subjective employment

practices.  This excessive subjectivity, they argue, produced disparities in the treatment of

African Americans and Hispanics.  Plaintiffs advance cases that have held that the grant

of excessive managerial discretion can, in appropriate circumstances, support a finding of

commonality.  See, e.g., Green v. USX Corp., 843 F.2d 1511, 1533 (3d Cir 1988),

vacated by 490 U.S. 1103 (1989), on remand, 896 F.2d 801, 805 (3d Cir. 1990)

(upholding the district court's finding of disparate impact centered around a plant-level

job interview which the court found was "wholly subjective" because it was based on

"gut reactions to the applicant");  Caridad v. Metro-North Commuter R.R., 191 F.3d 283,

**FOR PUBLICATION**

285 (2d Cir. 1999) (concluding that a company's policy of delegating discretionary authority to subordinate managers and supervisors to make employment decisions can constitute a common issue of fact to satisfy Rule 23(a)'s commonality requirement); Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 151 (N.D. Cal. 2004) (stating that excessive subjectivity can support a finding of commonality); McReynolds v. Sodexho Marriot Servs., Inc., 208 F.R.D. 428 (D.D.C. 2002) (holding that Sodexho's policy and practice of allowing each manager to make promotion decisions with no guidance or rules satisfied the commonality requirement).

Plaintiffs further allege that common to the putative class is Johnson & Johnson Corporate's failure to monitor the implementation of its employment guidelines to ensure that Johnson & Johnson policies are applied consistently and in a nondiscriminatory manner.

To support their assertion of commonality, Plaintiffs maintain that the class claims rely on a common set of facts.  First, they argue that Johnson & Johnson is a single company with common human resources practices applicable to all of its U.S. employees. In particular, they point to Johnson & Johnson's Corporate Credo, Compensation and Benefits Committee, Management Compensation Committee, and Worldwide Compensation Resources.  Second, Plaintiffs present statistical evidence of disparities between whites and minorities and anecdotal evidence of individuals who allege they were discriminated against on the basis of race.  Finally, Plaintiffs present evidence, in the form of internal memoranda and Company-wide EEOC reports, to suggest that senior

-10-

**FOR PUBLICATION**

management was aware that African Americans and Hispanics were under-represented in upper management.

Plaintiffs' brief and oral argument rely heavily on the Madden Report to support their allegations of common harm.  Dr. Madden analyzed data provided by Johnson & Johnson of over 50,000 employees to compare employment outcomes for African American, Hispanic, and white employees.  The Madden Report analyzes whether there are systemic differences in promotions, compensation, or initial job assignment by race and ethnicity for employees with equivalent credentials.  Dr. Madden used linear regression to analyze pay disparities and multiple pools analysis and probit regression to analyze promotion disparities.  Her report concluded that from 1997 to 2003: (1) African American employees were less likely than comparably qualified white employees to be selected for promotion, (2) African Americans and Hispanics had lower base salaries than comparably qualified whites, and (3) there was an average wage differential at hire by race and ethnicity.  Madden Report at 1-7.

Defendant challenges the Madden Report on the grounds that it distorts the data by improperly aggregating data from over thirty distinct companies.  According to Defendant, the Madden Report improperly "assumed" that the employees of all of the Johnson & Johnson companies faced common compensation and promotion practices and processes.  Defendant argues that this assumption is patently false given Johnson & Johnson's decentralized organizational structure with independent human resources policies at the subsidiary level.  Defendant instead offers the Wise Report in which Dr.

FOR PUBLICATION

Wise analyzed the data company-by-company and concluded that there are substantial differences in the determinants of compensation and promotion for each company. Dr. Wise further found that there is no common pattern of compensation and promotion consistently adverse to African American and Hispanic employees. Wise Report at 6-7.

The Court addressed the strengths and weaknesses of both the Madden Report and Wise Report in its November 6, 2006 Memorandum and determined that neither report is so fatally flawed to be inadmissible as a matter of law. Gutierrez, 2006 WL 3246605, *8. The Court concluded that it could consider the Madden Report in deciding whether there are sufficient common issues of law or fact to support class certification.[2]

The Court is troubled by statistics in the Madden Report that suggest that African Americans and Hispanics across the board receive comparatively lower pay and fewer promotions that their white counterparts. However, as the Court has made clear, the Madden report alone does not establish commonality. To prove commonality for class certification, Plaintiffs must identify a specific policy or practice of discrimination that was excessively subjective. Falcon, 457 U.S. at 157-58; Reap, 199 F.R.D. at 544. As example, in Green, a case on which Plaintiffs rely heavily, the plaintiffs identified a plant-level interview as the employment practice that resulted in disparate hiring practices. That court concluded that "the process by which [USX] divined who, among its applicants, were the best qualified was wholly subjective, consisting essentially of

---

[2]As the Court stated, although the Madden Report alone does not establish commonality, Dr. Madden's aggregated analysis may be highly relevant together with other evidence tending to show a pattern and practice of discrimination. Gutierrez, 2006 WL 3246605, * 4.

**FOR PUBLICATION**

combining the gut reactions to the applicant of employees in the personnel office and one or more foremen in the plant." <u>Green</u>, 896 F.2d at 805.  Similarly, in <u>Sodexho</u>, the plaintiffs demonstrated that the policy for promoting employees to high-level managerial positions was excessively subjective because there were no company guidelines or fixed criteria informing promotion decisions.  208 F.R.D. at 433.  In <u>Wal-Mart</u>, an expert analysis of the hiring and wage practices found that managerial decisions were made with "considerable discretion and little oversight."  222 F.R.D. at 153.  Furthermore, the report concluded that necessary "systematic elements were missing from the Wal-Mart decision-making process." <u>Id.</u>

Here, in contrast, Plaintiffs have failed to identify <u>any</u> policy that they allege is the source of discrimination.  Nor do they offer an expert report concluding that any of the policies, as developed and implemented by the human resources departments at the operating companies, are excessively subjective.[3]  Instead, Plaintiffs assert that the only possible explanation for the statistical disparity evidenced in the Madden Report is that the operating companies implemented the broad company guidelines in an excessively

_____

[3]That a company has a decentralized employment structure in which distinct and diverse subsidiaries have the freedom to develop their own employment policies and practices in accordance with general corporate guidelines does not in and of itself establish that there is excessive subjectivity.  The critical question is whether the human resources departments at the operating companies have implemented the Johnson & Johnson policies in an excessively subjective manner.  It is only if the Johnson & Johnson policy of delegating decisionmaking to the subsidiaries resulted in excessively subjective employment practices that Plaintiffs can make their failure to monitor argument.

-13-

**FOR PUBLICATION**

subjective manner.[4]  However, statistical disparities are insufficient to satisfy

commonality unless they are linked to an allegedly discriminatory practice that affected

the aggrieved class.  See Garcia, 211 F.R.D. at 21; Hartman, F.3d at 1472.   In Garcia,

Hispanic farmers challenged the Department of Agriculture's loan and benefit practices

as being excessively subjective and offered statistical analyses in support of their

contention that Hispanic farmers were less likely to receive loans that whites.  However,

the court held that the plaintiffs failed to demonstrate commonality because they did not

link the statistical disparity observed to a subjective practice.  Garcia, 211 F.R.D. at 21

("Dr. Hausman's analysis, however, fails to tie the statistical disparity he observes to any

one or more subjective criterion and thus fails to establish that subjective decision-

making is common to the proposed class.").

    Plaintiffs have the burden of supporting their assertion of commonality.  See Yapp

v. Union Pac. R.R. Co., 229 F.R.D. 608, 621-22 (E.D. Mo. 2005) ("It is impossible for

this Court to find common legal or factual issues between the named plaintiffs and any

putative plaintiffs when the named plaintiffs have not told the class what process or

procedure caused them to suffer disparate impact.").

    At oral argument, the Court offered Plaintiffs numerous, lengthy opportunities to

articulate the factual bases for their claim that the putative class members have suffered a

common harm.  In particular, the Court asked Plaintiffs to illustrate an employment

_____

    [4]The Madden Report did not attribute its findings to any particular employment practice
at Johnson & Johnson.

**FOR PUBLICATION**

practice at any operating company that was excessively subjective.  However, despite

having conducted extensive discovery, Plaintiffs could not identify a specific employment

practice.  They were unable to describe the employment policies (or lack of policies) at

the individual operating companies, let alone point to their shortcomings.  Instead,

Plaintiffs hypothesized that a minority would, on average, be more likely to receive the

lower end of the salary range than her white counterpart and more likely receive lower

marks on her employee evaluation.  Plaintiffs did not, however, support this contention

by pointing to subjective criteria in an operating company's evaluation form or the lack of

objective criteria to guide a manager's decisions regarding compensation or promotion.

     Defendant, in contrast, presented the report and deposition of Dr. Outtz, an

industrial organizational psychologist, which concluded that the policies and practices at

the Johnson & Johnson companies were not excessively subjective and are consistent

with best practices.  Outtz Report at 67.   Dr. Outtz examined the policies, practices, and

procedures of Johnson & Johnson Corporate and its subsidiaries in existence in 2001,

specifically with regard to compensation, performance appraisal, and promotion.  Id. at

42.  Plaintiffs' experts, Dr. William Bielby and Dr. John Veres, performed a peer review

of Dr. Outtz's report, but neither rendered an independent opinion as to whether the

human resources policies at the individual operating companies were excessively

subjective.   Bielby Dep. at 111; Veres Dep. at 61.

     In short, Plaintiffs presented no evidence to demonstrate that the human resources

departments at the Johnson & Johnson operating companies abused their discretion in

**FOR PUBLICATION**

operationalizing the corporate guidelines.  They made no showing that the established

employment policies permitted excessive subjectivity in compensation, evaluation, or

promotion.  Statistics and naked assertions of excessive subjectivity are inadequate to

establish that Plaintiffs have suffered a common harm susceptible to common proof.

Plaintiffs have not demonstrated the required nexus between their statistical analyses and

a policy or practice.  As the Court commented at oral argument, Plaintiffs' problem is the

absence or "failure of proof."

Given that Plaintiffs are unable to identify a single excessively subjective

employment practice, their failure to monitor argument necessarily collapses.  Plaintiffs

cannot make a showing that corporate headquarters failed to ensure that human resources

policies were implemented in a non-discriminatory manner across the operating

companies if they cannot point to any discriminatory practices at the individual operating

companies.

Furthermore, it is worth noting that the very diversity of the putative class also

undermines Plaintiffs' allegation of commonality.  The proposed class, which

encompasses clerical employees, physicians, lawyers, computer scientists, physicians,

lawyers, and computer specialists at thirty-five different companies, is unprecedented in

scope and diversity.  As the Sixth Circuit explained in a case involving a <u>single</u> company:

> We view with skepticism a class that encompasses 1) both workers and
> supervisors; 2) production-line workers and those in administrative
> positions; 3) workers in four plants with different production capabilities;
> and 4) workers and supervisors spread over more than 30 departments.
> Because class members have such different jobs, we find it difficult to

**FOR PUBLICATION**

> envision a common policy regarding promotions that would affect them all
> in the same manner.

Bacon v. Honda of America Mfg., 370 F.3d 565, 571 (6th Cir. 2004) (denying class

certification because proposed class was too diverse to meet the commonality

requirement).

In Wal- Mart and Sodexho, for example, the scope of the class was significantly

more limited.   The Wal-Mart class was limited to female in-store employees working in

nearly identical stores across America.  The class did not include pharmacists, managers

above the store level, other non-retail employees or headquarters personnel.  222 F.R.D.

at 146.   Similarly, in Sodexho, the claims addressed only promotion above a specified

managerial level.  Id. at 433.  In contrast, Plaintiffs seek to join employees from entry-

level positions to upper management, working in different capacities for companies

operating in different markets.  The vastness of the proposed class undermines the claim

that all of the putative class members were subject to common employment practices.

The Court finds that Plaintiffs' failure to support its naked allegation of excessive

subjectivity, together with the great diversity of the proposed class, defeats commonality

and typicality.

**D.  Adequacy**

Rule 23(a) requires the named plaintiffs to show that they will adequately

represent the interests of the class.  From a practical standpoint, this requirement also

tends to merge with commonality and typicality, although it also raises issues regarding

**FOR PUBLICATION**

the ability of class counsel to fully represent the class and whether any conflicts are

present or will arise between the representative plaintiffs and the class.  <u>Falcon</u>, 457 U.S.

at 158, n.13.

      Defendant argues that conflicts within the proposed class defeat the adequacy of

representation.  Defendant points to three main conflicts: 1) managers v. non-managers,

2) African Americans v. Hispanics, and 3) current v. former employees.  However, none

of these conflicts precludes a finding of adequacy.  The true test for adequate

representation is "whether the named plaintiffs possess the same interest and suffer the

same injury as the class members."  <u>Smith v. Nike Retail Services, Inc.</u> 234 F.R.D. 648,

661 (N.D.Ill. 2006) (quoting <u>Amchem Prodcuts, Inc. v. Windsor</u>, 521 U.S. 591, 625-26

(1997)).

      A class may encompass managers and non-managers.  As the court wrote in

<u>Sodexho</u>, "[t]he mere fact that some putative class members were involved in the

supervision and rating of other class members does not mean that the supervising class

members perpetuated or contributed to any of [the] alleged discriminatory policies."  208

F.R.D. at 447.  Here, there are no allegations that any of the class members engaged in the

allegedly discriminatory practices.  The Court finds that these alleged conflicts are

insufficient to defeat adequacy.

      The Court is also unpersuaded that having African Americans and Hispanics in

the same class defeats adequacy of representation.  Defendant argues that African

Americans and Hispanics have conflicting interests and notes that Morgan, a named

**FOR PUBLICATION**

plaintiff, was passed over for promotion in favor of a Hispanic.  However, it is important

to recognize that the challenged practices are excessive subjectivity and failure to

monitor.  To the extent that these practices adversely affected African American and

Hispanic employees alike, select instances in which members of one group received

preferential treatment over members of the other does not defeat their shared interest in

reform.

Defendant also argues that Plaintiffs cannot adequately represent the putative class

because all the named plaintiffs are former employees.  Defendant is correct that in the

non-class action context, former employees do not have standing to assert claims for

injunctive relief since there is no immediate threat that they will be wronged again.  City

of Los Angelos v. Lyons, 461 U.S. 95, 111 (1983); Cardenas v. Massey, 269 F.3d 251,

265 (3d Cir. 2001).  However, in Wetzel v. Liberty Mut. Ins. Co., the Third Circuit held

that it was not an abuse of discretion for a district court to permit two former female

technical employees, who alleged discrimination in hiring and promotion, to represent a

nationwide class consisting of all former, present, and future female technical employees

of the defendant.  508 F.2d 239 (3rd Cir. 1975).  The Wetzel court, further held that, even

if the plaintiffs voluntarily terminated their employment and therefore were not entitled to

reinstatement, they could still properly represent the proposed class.  Id. at 248.  The

rationale was that if former employees could not bring suit on behalf of a class that

included current employees, "employers would be encouraged to discharge those

employees suspected as most likely to initiate a Title VII suit in the expectation that such

**FOR PUBLICATION**

employees would thereby be rendered incapable of the bringing the suit as a class action."

Id. Wetzel is controlling.[5]  That none of the named plaintiffs is a current employee does

not defeat adequacy.

Although the Court finds that a class which includes managers and non-managers,

African Americans and Hispanics, and former employees and current employees does not

necessarily defeat adequacy, the Court is concerned that the named plaintiffs cannot

adequately represent the entire class because they have not identified a Johnson &

Johnson employment practice common to the entire class.  For the same reasons that the

Court holds that the proposed class does not meet the commonality and typicality

requirements of Rule 23(a), Plaintiffs have not demonstrated that they can adequately

represent the interests of the proposed class members.  Accordingly, the class cannot be

certified.

**II.  Rule 23(b)**

Because Plaintiffs have not met Rule 23(a)'s commonality, typicality, and

adequacy  requirements, the Court need not and will not address Rule 23(b).

**CONCLUSION**

---

[5]Defendant argues that Wetzel is no longer good law because it preceded the Civil Rights
Act of 1991, which made damages an available remedy, thereby increasing the liklihood that a
former employee would have a greater interest in seeking monetary relief rather than injunctive
relief.  However, Defendant cites no case law undermining Wetzel.  Although the remedies
available expanded greatly after the 1991 Amendment, the policy rationale underlying Wetzel
applies here.

**FOR PUBLICATION**

Is it on this 19th day of December, 2006:

ORDERED that Plaintiffs' motion for class certification is DENIED.


                               __ s/ William H. Walls_____
                               **William H. Walls, U.S.D.J.**

**FOR PUBLICATION**

**Appearances:**

     Bennet Dann Zurofsky (Reitman Parsonett)

     Cyrus Mehri (Mehri & Skalet)

     Nicole M. Austin-Hillery (Mehri & Skalet)

     Pamela Coukos (Mehri & Skalet)

     Cameron Stewart (The Cochran Firm)

     Bruce Ludwig (Sheller, Ludwig, & Badey, PC)

     Jonathan Shub (Sheller, Ludwig, & Badey, PC)

     Scott George (Sheller, Ludwig, & Badey, PC)

          Attorneys for Plaintiffs


     Theodore Wells, Jr. (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)

     Jeh Charles Johnson (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)

     Maria H. Keane (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)

     Melanie H. Stein (Paul, Weiss, Rifkand, Wharton, & Garrison, LLP)

     Francis X. Dee (McElroy, Deutch, Mulvaney, & Carpenter, LLP)

     Stephen F. Pyerle (McElroy, Deutch, Mulvaney, & Carpenter, LLP)

     David B. Beal (McElroy, Deutch, Mulvaney, & Carpenter, LLP)

     Donald R. Livingston (Akin Gump Strauss Hauer & Feld, LLP)

     Nancy Rafuse (Ashe Rafuse & Hill LLP)

     Barbara A. McCormick (Johnson & Johnson)

          Attorneys for Defendant