# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NILDA GUTIERREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON,<br><br>Defendant. | Civil Action No. 01-5302 (WHW)<br><br>**FILED ELECTRONICALLY** |

## JOHNSON & JOHNSON'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION
## <u>FOR RECONSIDERATION AND REARGUMENT</u>

Theodore V. Wells, Jr.
Jeh Charles Johnson
Maria H. Keane
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Francis X. Dee
Stephen F. Payerle
**McELROY DEUTSCH MULVANEY &**
**CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Donald R. Livingston
**AKIN GUMP STRAUSS HAUER & FELD, L.L.P.**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000

Nancy Rafuse
**ASHE RAFUSE & HILL LLP**
1355 Peachtree Street
Suite 500
Atlanta, GA 30309
(404) 253-6000

Barbara A. McCormick
**JOHNSON & JOHNSON**
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933
(732) 524-3758

Counsel for Defendant Johnson & Johnson

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................ii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ....................................................................................... 2

I.    THE COURT APPLIED THE CORRECT LEGAL STANDARD .............. 2

II.   PLAINTIFFS HAVE NOT SHOWN THAT THERE WAS AN ERROR OF
      FACT....................................................................................... 7
      A.    Promotions ..................................................... 8
      B.    Compensation .................................................. 9
      C.    Performance Evaluations ................................. 10
      D.    Evidence of Intentional Discrimination.............. 13

III.  PLAINTIFFS' REQUEST FOR ALTERNATIVE CLASS DEFINITIONS
      IS IMPROPER AND UNSUPPORTED BY ANY ANALYSIS ................ 14

CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson* v. *Douglas & Lomason Co., Inc.*,
    26 F.3d 1277 (5th Cir. 1994).......................................................................... 11

*Arnold* v. *Cargill, Inc.*,
    Civil No. 01-2086, 2006 WL 1716221 (D. Minn. June 20, 2006) ............... 10

*Appleton* v. *Deloitte & Touche*,
    168 F.R.D. 221 (M.D. Tenn. 1996) ............................................................... 3

*Caridad* v. *Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999)........................................................................... 4

*Carpenter* v. *Boeing Co.*,
    No. 02-1019-WEB, 2004 WL 2661691 (Kan. D.C. Feb. 24,
    2004)................................................................................................................ 3

*Clady* v. *County of Los Angeles*,
    770 F.2d 1421 (9th Cir. 1985)....................................................................... 11

*Dukes* v. *Wal-Mart, Inc.*,
    Nos. 04-16688, 04-16720, 2007 WL 329022 (9th Cir. Feb. 6,
    2007)................................................................................................................ 5

*Garcia* v. *Veneman*,
    211 F.R.D. 15 (D.D.C. 2002)...................................................................... 4, 6

*Green* v. *USX Corp.*,
    896 F.2d 801 (3d Cir. 1990)..................................................................... 2, 3, 4

*Hartman* v. *Duffey*,
    19 F.3d 1459 (D.C. Cir. 1994) ...................................................................... 4

*H.T. ex rel. S.T.* v. *East Windsor Regional School Dist.*,
    Civil No. 04-1633 (AET), 2007 WL 135971 (D.N.J. Jan. 16,
    2007)................................................................................................................ 1

*In re Initial Public Offering Securities Litigation*,
    471 F.3d 24 (2d Cir. 2006).......................................................................... 3, 4

*Int'l Bhd. of Teamsters* v. *United States*,
　　431 U.S. 324 (1977) ............................................................................ 13

*Johnston* v. *HBO Film Mgt. Inc.*,
　　265 F.3d 178 (3d Cir. 2001) ................................................................. 3

*Max's Seafood Café* v. *Quinteros*,
　　176 F.3d 669 (3d Cir. 1999) ................................................................. 1

*Newton* v. *Lynch*,
　　259 F.3d 154 (3d Cir. 2001) ................................................................. 3

*Reap* v. *Cont'l Cas. Co.*,
　　199 F.R.D. 536 .................................................................................... 4

*Rylick* v. *Digital Sec. Controls, Ltd.*,
　　Civil Action No. 06-2031 (SRC), 2007 WL 150435 (D.N.J. Jan.
　　16, 2007) .............................................................................................. 1

*Satchell* v. *FedEx Corp*,
　　2005 U.S. Dist. LEXIS 37354 (N.D. Cal. Sept. 28, 2005) ............... 11

*U.S.* v. *North Carolina*,
　　914 F. Supp. 1257 (E.D.N.C. 1996) ..................................................... 3

*Wards Cove Packing Co.* v. *Antonio*,
　　490 U.S. 642 (1989) ............................................................................. 2

*Yapp* v. *Union Pacific R.R. Co*,
　　229 F.R.D. 608 (E.D. Mo. 2005) ......................................................... 6

## PRELIMINARY STATEMENT

Plaintiffs' motion for reconsideration and reargument should be denied. Nothing in plaintiffs' motion comes close to meeting the standard for reconsideration and reargument – which requires an intervening change in the law, newly discovered evidence, or a clear legal error by the Court.[1] After hundreds of pages of briefing, an entire day's hearing at which the Court gave plaintiffs multiple opportunities to spell out their case, and, lastly, a thoughtful 20-page opinion denying class certification, plaintiffs simply want to continue the argument.

On December 5 the Court repeatedly asked for but received no answer from plaintiffs to the most basic question in a putative class action – what is the alleged source of common harm to the putative class? Now, in one more effort to answer the Court's question, plaintiffs resort to made-up assertions nowhere supported in the record (like "Dr. Veres concluded that Johnson & Johnson's promotions practices are highly subjective"), and retreat to the claim that they need only have shown "potential mechanisms" that "may" or "can" be the source of

---

[1] *See, e.g., Max's Seafood Café* v. *Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *H.T. ex rel. S.T.* v. *East Windsor Regional School Dist.*, Civil No. 04-1633 (AET), 2007 WL 135971, at *1 (D.N.J. Jan. 16, 2007); *Rylick* v. *Digital Sec. Controls, Ltd.*, Civil Action No. 06-2031 (SRC), 2007 WL 150435, at *1-2, (D.N.J. Jan. 16, 2007).

discrimination – a standard for class certification so low it should be self-evident that it cannot possibly be the law.

Also, after five years of litigation, plaintiffs suggest for the first time the possibility of an alternative class definition. But, plaintiffs offer no principled rationale for why the one "example" they suggest – professionals and managers, which still encompasses many different job positions across more than 30 different companies with a variety of HR practices and policies – does not suffer from the same lack of commonality as the proposed class already rejected by the Court.

A motion for reconsideration is not a vehicle to simply continue the rhetoric. As the Court said several times, December 5 was the time to "fish or cut bait" in this case. The motion should be denied.

## ARGUMENT

### I.

## THE COURT APPLIED THE CORRECT LEGAL STANDARD

Plaintiffs claim that the Court held them to a standard of proof reflected in *Wards Cove Packing Co.* v. *Antonio,* 490 U.S. 642 (1989) and *Green* v. *USX Corp.*, 896 F.2d 801 (3d Cir. 1990) ("*Green II*") that is no longer good law by virtue of the 1991 amendment to Title VII. Plaintiffs argue that, in light of this, the Court was compelled to accept a very low evidentiary showing that is outlined in their brief (Plts' Br. at 2). Plaintiffs are wrong on several levels.

2

First, plaintiffs are simply incorrect when they say that *Wards Cove*

and *Green II* are no longer good law by virtue of the Civil Rights Act of 1991. To

the contrary, numerous cases decided after 1991 continue to cite these two

authorities. *See, e.g., Carpenter* v. *Boeing Co.*, No. 02-1019-WEB, 2004 WL

2661691, * 9 (D. Kan. Feb. 24, 2004), *aff'd*, 456 F.3d 1183 (10th Cir. 2006) (noting

that § 2000e-2(k)(1)(B)(i) codified *Watson* requirement that plaintiff must isolate

specific employment practice at issue when employer combined subjective and

objective standards); *Garcia* v. *Veneman*, 211 F.R.D. 15 n.7 (D.D.C. 2002); *U.S.* v.

*North Carolina*, 914 F. Supp. 1257, 1265 n.9 (E.D.N.C. 1996) ("Although some of

*Wards Cove* was altered by the 1991 amendments to Tile VII, most of the opinion

remains in full force."); *Appleton* v. *Deloitte & Touche*, 168 F.R.D. 221, 226 (M.D.

Tenn. 1996) ("Courts have determined that the [Civil Rights Act of 1991] did not

alter the 'particularity' aspect of *Wards Cove*."). [2]

---

[2]   As a related matter, plaintiffs say that the Court improperly applied a "merits-level standard" to the inquiry.  As the Third Circuit has held, in reviewing a motion for class certification courts may conduct a preliminary inquiry into the merits if necessary to determine whether the alleged claims can be properly resolved as a class action. *See Newton* v. *Lynch*, 259 F.3d 154, 166 (3d Cir. 2001); *Johnston* v. *HBO Film Mgt. Inc.*, 265 F.3d 178, 186-89 (3d Cir. 2001). In reliance upon the Third Circuit authority, that is what the Court did here.  *See* Op. at 7.  In this case, such an inquiry was both proper and warranted.  On December 5, 2006 (the same day as the hearing in this case), the Second Circuit held that district courts must make factual determinations when considering motions for class certification, even when those determinations overlap with merits issues.  *See In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 40-41 (2d Cir. 2006).  In so doing, the Second Circuit actually retreated

Second, plaintiffs mischaracterize the Court's opinion. Plaintiffs stress the Court's reference to *Green II* and the fact that plaintiffs in that case had (in contrast to plaintiffs here) identified a specific employment practice – a plant-level job interview – that resulted in disparate hiring. But, this Court's conclusion that there was a "failure of proof" in plaintiffs' case did not hinge simply on a failure to specify a Johnson & Johnson policy or practice that was excessively subjective. This Court's reference to *Green II* was illustrative of a far more fundamental problem in plaintiffs' case – the basic lack of Rule 23 commonality.

Plaintiffs overlook that, at page 8 of its Opinion, the Court stated that "plaintiffs must make a <u>significant</u> <u>showing</u> to permit the court to infer that members of the class suffer from a common policy of discrimination that pervaded all of the employer's challenged employment decisions" (quoting *Garcia* v. *Veneman*, 211 F.R.D. 15, 18 (D.D.C. 2002); *Hartman* v. *Duffey*, 19 F.3d 1459, 1472 (D.C. Cir. 1994)). *See also Reap* v. *Cont'l Cas. Co.*, 199 F.R.D. 536, 544 (D.N.J. 2001). This is basic to the commonality requirement of Rule 23(a), and, to be sure, the 1991 amendment to Title VII did not eliminate it.

Despite numerous opportunities to do so, plaintiffs could not and did not make this case. As the Court noted, plaintiffs failed to identify (i) any policy that they allege is the source of discrimination (Op. at 13), (ii) any policy that is

---

from *Caridad* v. *Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999), a decision on which plaintiffs continue to rely (Plts' Br. at 5).

4

excessively subjective (Op. at 13, 16), (iii) "a common harm susceptible to common proof" (Op. at 14, 16), and (iv) the required nexus between their statistical analysis and a policy or practice at the operating companies (Op. at 16).[3]

All of these are basic to the commonality requirement of Rule 23. To illustrate: if, in a discrimination case, plaintiffs cannot even identify a policy that is a source of discrimination, how can the Court possibly conclude that there are questions of fact common to the class? Likewise, if plaintiffs do not even show an injury across the putative class susceptible to common proof, how can the Court consider binding the putative class together in one case? Finally, if the statistics plaintiffs offer are not linked to a particular policy or practice common to Johnson & Johnson companies, what use are they at all in demonstrating commonality?

This last point is particularly compelling in the case of Johnson & Johnson and its more than 30 operating companies. Without a nexus between plaintiffs' statistics and any HR practice at the Johnson & Johnson companies, the Court was left only to speculate about the source of the alleged disparity, and

---

[3]    On February 6, 2007, a panel of the Ninth Circuit affirmed (by a vote of 2-1) the grant of class certification in *Dukes* v. *Wal-Mart, Inc.*, Nos. 04-16688, 04-16720, 2007 WL 329022 (9th Cir. Feb. 6, 2007). On February 8, plaintiffs wrote this Court to note various aspects of the Ninth Circuit's opinion. But plaintiffs' selective characterizations of the 41-page opinion continue to ignore two crucial differences between *Wal-Mart* and this case: In *Wal-Mart,* unlike here, the central proof of commonality existed in the form of Wal-Mart's centralized, homogeneous corporate structure and common HR policies (not challenged by Wal-Mart). Also, the proposed class in Wal-Mart was far more narrow than here and did not, by its diversity, undermine (as here) a finding of commonality.

whether that source is common to all Johnson & Johnson companies. Even assuming the validity of plaintiffs' statistics, the Court might correctly assume that a disparity at one company is driven by a phenomenon unique to that company, while the statistics at another company are driven by an HR practice at that other company. This proves nothing about commonality, and, in fact, undermines it.

In short, the situation the Court faced here is the very situation faced by the Court in *Yapp* v. *Union Pacific R.R. Co.*, 229 F.R.D. 608 (E.D. Mo. 2005) (which, by the way, was decided after the 1991 amendment):

> …[T]he Court is left wondering what process or procedure at UPRR is causing the alleged discriminatory impact, which also means that the Court has to wonder if that process or aspect is common to those who have attempted to obtain employment in the more than twenty different departments at UPRR that the plaintiffs seek to represent... It is impossible for this Court to find common legal or factual issues between the named plaintiffs and any putative plaintiffs when the named plaintiffs have not told this Court what process or procedure caused them to suffer disparate impact, especially considering that the many departments utilize different methods for selecting job candidates that encompass both objective and subjective criteria. Therefore, the Court concludes that as plaintiffs have not identified the practice or procedure that is causing disparate impact in an organization with mixed objective and subjective hiring methods and discretion left to hiring managers, there can be no finding of commonality in this case warranting class certification.

*Yapp*, 229 F.R.D. at 622; *see also Garcia*, 211 F.R.D. at 21 (statistical disparities do not alone permit inference of a common injury).

Third, and finally, the standard plaintiffs say that the Court should have applied here is so low as to defy common sense. Plaintiffs argue that all they

needed to show for class certification was "a number of aspects of defendant's practices that <u>may</u> operate as mechanisms for discrimination" and to provide the Court with "expert testimony that these kinds of practices <u>can</u> serve as conduits for bias" (*See* Plts' Br. at 6) (emphasis added).  Even without reference to the relevant legal authority, it should be self-evident that this formulation by plaintiffs – containing the operative words "may" and "can" – cannot possibly be enough to warrant class certification in an employment case.  If this were all that is necessary, then almost every motion for class certification against large corporate employers would be granted, plaintiffs could obtain class certification based on mere allegations and assumptions, and we need not have spent the last five years litigating this case.

## II.

### PLAINTIFFS HAVE NOT SHOWN THAT THERE WAS AN ERROR OF FACT

After a full-day hearing at which plaintiffs were repeatedly asked by the Court to spell out their case of "common harm," plaintiffs now say that they did in fact identify "potential mechanisms for discrimination" that "may" be the source of discrimination (Plts' Br. 7-13).  As stated before, the standard for class certification is not nearly this low.  Aside from that, plaintiffs' assertions about the state of the record are simply not accurate, as we demonstrate below.

## A.  **Promotions**

For promotions, plaintiffs claim that the "potential mechanism" is the alleged failure to post open positions below the Director level, which they claim was a common policy until 2003 (Plts' Br. 7-8).  Plaintiffs assert, without citation, that "Dr. Veres concluded that Johnson & Johnson's promotion practices are highly subjective" (Plts' Br. 8).   Plaintiffs then leap to the conclusion that the alleged "failure to post all jobs below Director level allows for highly subjective promotions practices, consistent with the alleged significant promotion disparities adverse to African Americans found by Dr. Madden and Dr. Wise" (*Id.*).

These are unsupported assertions and conclusions.  It was Johnson & Johnson's expert, not plaintiffs' experts, who took the time to investigate and assess promotion practices (including job posting) at the more than 30 Johnson & Johnson subsidiaries.   From this review, Dr. James Outtz concluded that job posting and other promotion practices at Johnson & Johnson companies were different from company to company and are "consistent with professional standards for best practices" (Outtz Report at v, 34, 54, 56-57, 67, Outtz Dep. at 237).   On the other hand, Dr. Veres offered no testimony that any promotion practice – either at an individual subsidiary or across Johnson & Johnson – was "highly subjective" or "excessively subjective" (*see, e.g.* Veres Dep. 339).  Plaintiffs' assertion (without citation) at page 8 of their brief that "Dr. Veres

8

concluded that Johnson & Johnson's promotion practices are highly subjective" is simply not true. Meanwhile, plaintiffs' other expert, Dr. Bielby, acknowledged in his deposition that he conducted <u>no</u> analysis at all of job posting, career development or succession planning policies at the operating companies (Bielby Dep. at 132-133).[4]

## B.    <u>Compensation</u>

Plaintiffs' last-ditch assertions about compensation practices are just as flawed. Plaintiffs assert that the compensation practices at "all" of Johnson & Johnson's operating companies contain "significant zones of discretion" and that there are a number of "specific flaws in how these policies are implemented, which <u>may</u> explain the significant compensation disparities Dr. Madden found" (Plts' Br. 9) (emphasis added). As support for this claim, plaintiffs say that Johnson & Johnson's corporate guidelines delegate broad discretion <u>to individual managers</u> at the operating companies to set compensation within those guidelines.

Again, this is wrong. Johnson & Johnson grants each subsidiary –<u>not individual managers</u> – discretion to implement the compensation guidelines to fit its business needs (Outtz Report at 22). And, the fact that the subsidiaries themselves have "broad discretion" to set compensation – as plaintiffs put it – is

---

[4] While plaintiffs suggest that Dr. Bielby offered an opinion that the failure to post openings causes bias (Plts' Br. at 7, n.3), he did not offer such an opinion with respect to the particular facts of this case (*see* Bielby Dep. at 124-126).

hardly evidence of a common pattern or practice of discrimination; it is the very type of compensation structure that the Court in *Arnold* v. *Cargill, Inc.* found undermined commonality. *See Arnold* v. *Cargill, Inc.*, Civil No. 01-2086, 2006 WL 1716221 at *4. (D. Minn. June 20, 2006) ("Although Cargill articulates a broad compensation philosophy, [Cargill's business units] and the [business units'] various locations are free to develop and implement compensation plans that meet their unique, competitive business needs as long as they meet 'minimum standards' of legal compliance, fairness, and support of Cargill's compensation philosophy.").

Here again, Dr. Outtz took the time to review in detail the compensation practices at Johnson & Johnson companies and concluded that those policies and practices were significantly different from company to company, and are consistent with professional standards for best practices and not excessively subjective (Outtz Dep. at 217-218, Outtz Report at 49, 52, 54). Despite plenty of opportunity to do so, Drs. Veres and Bielby did not and could not rebut this conclusion (Bielby Dep. at 143; *see generally* Veres Rebuttal Report and Dep).

**C.   Performance Evaluations**

Next, plaintiffs claim that there are "grave weaknesses of the performance review system,"[5] which they argue are "another potential mechanism

---

[5]   Plaintiffs continue to cite Dr. Wise's partial and preliminary study of performance ratings of sales employees as if it were proof of companywide findings and conclusions. In fact, this analysis was preliminary and focused on only four companies. Dr. Wise did not have complete information on the sales

for discrimination in compensation" (Plts' Br. 10) (emphasis added).  But nowhere do plaintiffs tell us what the "grave weaknesses" are, nor did their experts.[6] Plaintiffs also make the bold and unsupported assertion that there is one performance system throughout all the companies, and that performance appraisal forms, "although differing in some details among business units, use the same basic structure, which uniformly allows managers to exercise unmonitored discretion at all critical decisionmaking junctures" (Plts' Br. 11). [7]

---

performance calculations and sales rankings used at the four companies.  And, Dr. Wise reported different findings for the four companies he examined. African Americans actually received higher merit percent increases in pay at one of the four companies despite having on average lower performance ratings. (*See* December 17, 2003 Memo of Dr. Wise, 1-3, Stein Decl. Ex. 7); January 17, 2004 Memo of Dr. Wise, 5, Stein Decl. Ex. 8).

[6]  Plaintiffs' assertion that it is a *prima facie* violation of Title VII if a company does not validate its performance review system is baseless.  Such validation is only triggered when adverse impact has been found, which is not the case here. *See* The Uniform Guidelines on Employee Selection Procedures, 29 CFR 1607.1.  In addition, those guidelines "are not legally binding.  They have not been promulgated as regulations and do not have the force of law."  *Clady* v. *County of Los Angeles,* 770 F.2d 1421, 1428 (9th Cir. 1985) (citing *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 141-42 (1976)), *cert. denied*, 475 U.S. 1109 (1986). *See also Anderson* v. *Douglas & Lomason Co., Inc*., 26 F.3d 1277, 1287 (5th Cir. 1994).  Plaintiffs' suggestion that Dr. Outtz agrees that the Uniform Guidelines apply to the facts here is likewise unsupported.  *See* Outtz Dep. at 255-258.

[7]  Plaintiffs, citing *Satchell* v. *FedEx Corp*., No. C 03-02659 SI, 2005 WL 2397522 at *6 (N.D. Cal. Sept. 28, 2005), argue that the use of different evaluation forms does not defeat commonality (Plts' Br. at 11 n.11).  As the Court in *Satchell* held, however, the relevant issue for class certification purposes is not the number of different forms, but rather "whether [the companies'] systems and processes for evaluating employees present common issues" (*Id*.).  The record evidence here is very different from that in *Satchell*.

Here again, it was defendant's expert, Dr. Outtz, who provided the only relevant opinion on the issue: he testified that he reviewed a representative sample of performance appraisals from each of the operating companies, concluded that there are significant differences in the performance evaluation systems from company to company, and that those systems "exceeded the standards of accepted professional practice with regard to objectivity" (Outtz Report at v). Meanwhile, Drs. Veres and Bielby did no independent analysis of the performance evaluation systems at the operating companies (Veres Dep. at 239-240; *see generally*, Bielby Rebuttal Report). Neither offered an affirmative opinion whether the performance systems at each of the subsidiaries were the same or different, whether they met professional standards for best practices, or whether or not they were excessively subjective.[8] (Bielby Dep. at 99, 111; *see generally* Veres Rebuttal Report). To the contrary, when shown some performance

---

[8] Another example of plaintiffs' mischaracterization of their experts' work is their assertion that Dr. Veres opined that "almost all of the operating companies reported relying in their reviews on some or all of the Corporate Standards of Leadership, which fail to track specific behaviors." *See* Plts' Br. at 12, citing Veres Report at 37. That is simply not what Dr. Veres said. Nor was Dr. Veres' view based on an independent analysis of the sample of performance appraisals from the operating companies, which plaintiffs' counsel refused three times to give Dr. Veres (Veres Dep. at 239-240).

evaluations at his deposition, Dr. Veres testified that they appeared to him to be

objective, and not excessively subjective (Veres Dep. at 274, 278). [9]

### D.    Evidence of Intentional Discrimination

In two paragraphs at pp. 12-13 of their brief, plaintiffs try to resurrect

their disparate treatment claim.   Plaintiffs assert that they established "an inference

of purposeful discrimination" through the report of Dr. Madden, the anecdotal

declarations from putative class members, and purported evidence of upper

management's knowledge and failure to address and monitor adverse impact.   This

is not nearly enough to make out a case of purposeful discrimination.   *Jones v.

GPU, Inc.,* 234 F.R.D. 82, 92-93 (E.D. Pa. 2005) ("'lack of monitoring' of

employment decisions does not evidence discriminatory intent.");  *see also Int'l

Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 336 (1977).   In addition, as the

Court noted, any complaint for failure to monitor or address supposed disparities

---

[9]  Plaintiffs also assert, again relying, without basis, on Dr. Veres, that the objectivity of the performance appraisals "was destroyed" in the calibration sessions (which plaintiffs incorrectly refer to as "informal conversations"), which are used to ensure that performance appraisals are given in a uniform manner within and across departments at various companies (Plts' Br. at 12). All Dr. Veres stated in his report is that calibration sessions "could" dilute objectivity if "performance cards and group discussions … did not 'require thorough and consistent documentation across raters that includes specific examples of performance based on personal knowledge'" (Veres Report at 41). He did not opine that in fact this was the case here. Moreover, at his deposition, Dr. Veres testified that calibration could be a significant safeguard for fairness and objectivity (*see* Veres Dep. at 267).

necessarily fails if plaintiffs do not even identify a single excessively subjective employment practice. *See* Op. at 16.

### III.

### PLAINTIFFS' REQUEST FOR ALTERNATIVE CLASS DEFINITIONS IS IMPROPER AND UNSUPPORTED BY ANALYSIS

For the first time in five years of litigation, plaintiffs ask the Court to consider certifying an alternate class, and ask the Court to indulge further briefing and analysis of the issue. Plaintiffs do not and cannot base this new idea on a change in law, newly discovered evidence or a clear legal error by the Court (the standard for a motion for reconsideration); they simply float the idea now that their original proposal has been denied. But, as the Court warned several times on December 5, that was time to "fish or cut bait."

Aside from that, the one "example" of a potential subclass that plaintiffs suggest – professionals and managers – is not accompanied by any rationale to suggest why such a subclass, while smaller in number, is any more cohesive than the one denied by the Court. While plaintiffs claim, without support, that this group "suffered more pronounced disparities" than the denied class (Plts' Br. at 15), they offer no additional evidence of commonality, typicality and adequacy to justify this or any other subclass. Such a subclass of professional and managerial employees would still exist across more than 30 different companies in

14

widely diverse businesses with significantly different HR policies and practices, encompassing many different types of job positions, and is inappropriate for all the same reasons the Court rejected the previous class definition.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny plaintiffs' motion for reconsideration and reargument.

Dated:  February 9, 2007

/s/ Theodore V. Wells, Jr.

Theodore V. Wells, Jr. (TW 2830)
Jeh Charles Johnson
Maria H. Keane
Martin S. Bell*
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Donald R. Livingston
**AKIN GUMP STRAUSS HAUER**
**& FELD, L.L.P.**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000

Francis X. Dee (FD 7739)
Stephen F. Payerle
**McELROY DEUTSCH**
**MULVANEY & CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711

Nancy Rafuse
**ASHE RAFUSE & HILL LLP**
1355 Peachtree Street
Suite 500
Atlanta, GA 30309
(404) 253-6000

Barbara A. McCormick
**Johnson & Johnson**
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
(732) 524-3758

Counsel for Defendant Johnson & Johnson

---

\*   Not admitted *pro hac vice*.  Not yet admitted to the Bar.