# UNITED STATES DISTRICT COURT

### District of New Jersey

Chambers of
**William H. Walls**
District Judge
——————

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

<u>NOT FOR PUBLICATION</u>

<u>MEMORANDUM</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

April 9, 2007

**Appearances:**

**Attorneys for Plaintiff Class**
Bennet Dann Zurofsky
Reitman Parsonett, PC
744 Broad Street, Suite 1807
Newark, NJ 07102

Cyrus Mehri
Nicole M. Austin-Hillery
Pamela Coukos
Mehri & Skalet, PLLC
1250 Connecticut Avenue, NW
Suite 300
Washington D.C. 20036

Cameron Stewart
The Cochran Firm
4929 Wishire Boulevard
Suite 1010
Los Angeles, CA 90010

Bruce Ludwig
Jonathan Shub
Scott George
Sheller, Ludwig & Sheller, PC
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102

**Attorneys for Defendant Johnson & Johnson**

Theodore Wells, Jr.
Jeh Charles Johnson
Maria H. Keane
Melanie H. Stein
Paul, Weis, Rifkan, Wharton & Garrison LLP
1285 Avene of the Americas
New York, NY 10019

Donald R. Livingston
Akin Gump Strauss Hauer & Feld, L.L.P.
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Francis X. Dee
Stephen F. Pyerle
McElroy, Deutch, Mulvaney, & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102

Nancy Rafuse
Ashe Rafuse & Hill LLP
1355 Peachtree Street
Suite 500
Atlanta, GA 30309

Barbara A. McCormick
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933


Re:     <u>Gutierrez v. Johnson & Johnson</u>; No. 01-5302 (WHW)
        Plaintiffs' Motion for Reconsideration

Dear Litigants:

Plaintiffs move for reconsideration of this Court's December 19, 2006 Memorandum and

Order.  Pursuant to Fed. R. Civ. P. 78, this motion is decided without oral argument.  The motion

is denied.

## FACTS AND PROCEDURAL BACKGROUND

On December 19, 2006 this Court ruled on Plaintiffs' motion for class certification. Gutierrez v. Johnson & Johnson, – F.Supp.2d – (D.N.J. 2006) ("Opinion").  After careful consideration of the moving and opposition papers, voluminous exhibits, and a full-day hearing, the Court concluded that Plaintiffs did not satisfy the commonality requirement.  The Court found that Plaintiffs did not demonstrate the required nexus between their statistical analyses and a policy or practice common to the entire class.  Id. at 12.  Accordingly, the motion for class certification was denied.

Plaintiffs move for reconsideration of the decision denying class certification.  In the alternative, Plaintiffs ask the Court to consider certifying a narrower class than the one originally proposed.

### I.    MOTION FOR RECONSIDERATION

### LEGAL STANDARD

Under Fed. R. Civ. P. 59(e), a litigant may move to alter or amend a judgment within ten days of its entry.  Similarly, L. Civ. R. 7.1(i) allows a party to seek reconsideration of  "matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked."  The Third Circuit has held that the "purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)) (internal quotations omitted).

Reconsideration motions may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised before the entry of judgment.  P. Schoenfled

Asset Mgmt. L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001); 11 Charles A. Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 2006). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." Gutierrez v. Ashcroft, 289 F.Supp.2d 555, 561 (D.N.J. 2003) (quoting G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)).

Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention but not considered. Yurecko v. Port Auth. Trans-Hudson Corp., 279 F. Supp. 2d 606, 608-09 (D.N.J. 2003); see NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

## DISCUSSION

On December 19, 2006, this Court denied Plaintiffs' motion for class certification. The Court held, inter alia, that Plaintiffs had failed to prove commonality under Rule 23. Plaintiffs ask this Court to reconsider its determination that Plaintiffs did not make the requisite showing.

Plaintiffs argue that the Court made an error of law by: "(1) applying a merits-level standard to Plaintiffs' evidence of potential causal mechanisms, rather than analyzing them in the context of Plaintiffs' burden at class certification; and (2) holding Plaintiffs to the restrictive standards of Wards Cove Packing Co. v. San Antonio, 490 U.S. 642, 657 (1989) and Green v.

4

USX Corp., 896 F.2d 801, 802, 804-5 (3d Cir. 1990) ("Green II")."  (Pls. Br. at 2.)

Plaintiffs also suggest that the Court overlooked key evidence that supports class certification.  In particular, Plaintiffs point to: "(a) the failure throughout Johnson & Johnson's operating companies to require job posting; (b) a compensation system used throughout Johnson & Johnson with zones of discretion that permit bias against class members; and (c) a performance appraisal system that has caused disparities at every operating company."  (Pls. Br. at 2.)

First, Plaintiffs argue that the Court improperly applied a "merits-level standard" to the class certification inquiry.  Plaintiffs maintain that under the Rule 23 analysis, "the submission of expert testimony identifying potential mechanisms in policies common to the class, and expressing a preliminary opinion with respect to causation" is sufficient to meet their burden.  (Pls. Br. at 4.)  Plaintiffs attempt to re-litigate an issue that has been previously considered and decided by the Court – whether it is appropriate to make a preliminary inquiry into the merits at the class certification stage.  In its Opinion, this Court relied upon Supreme Court and Third Circuit authority to conclude that a Court may, in appropriate circumstances, conduct a preliminary inquiry into the merits to determine whether the alleged claims may be properly resolved as a class action.  See Coopers & Librand v. Lindsey, 437 U.S. 463, 469 n.12; General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982); Newton v. Lynch, 259 F.3d 154, 166 (3d Cir. 2001); Johnston v. HBO Film Mgt., Inc., 265 F.3d 178 (3d Cir. 2001).

Plaintiffs do not argue that there has been any intervening change in the law to warrant a different decision.  To the contrary, a recent Second Circuit opinion, In re Initial Public Offering, 471 F.3d 24 (2d Cir. 2006), bolsters this Court's approach.  In that case, the court held that district courts must make factual determinations when considering motions for class certification,

even when those determinations overlap with merits issues.  Id. at 40-41.  The Second Circuit

conducted a detailed analysis of Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)[1], and

later cases interpreting it and concluded that Eisen's prescription against inquiring into the merits

of a case at the class certification stage is limited to cases where the merits issue is unrelated to a

Rule 23 requirement.  In re Initial Public Securities Offering, 471 F.3d at 41.  This is not such a

case.  Here, the issue of commonality is intimately involved with whether or not Plaintiffs were

subject to a discriminatory employment policy.

Plaintiffs' second argument, that "the Court erred on the law by using the Green II/ Wards

Cove standard" is a mischaracterization of the Court's reasoning.  (Pl's. Br. at 6.)  Plaintiffs

maintain that Wards Cove, and consequently Green II, which relied on Wards Cove,[2] were

effectively overruled by the Civil Rights Act of 1991.[3]  Plaintiffs argue that the 1991 Amendment

created a loser standard for stating a prima facie case of disparate impact and maintain that they

---

[1]Eisen v. Carlisle & Jacquelin is the source of the oft-quoted statement: "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  417 U.S. at 177.

[2]The Third Circuit's decision in Green v. USX Corp., 843 F.2d 1511 (1988) ("Green I"), which upheld the district court's finding of commonality, was vacated by the Supreme Court and remanded for consideration in light of Wards Cove , 490 U.S. 642.  See USX Corp. v. Green, 490 U.S. 1103 (1989).  Wards Cove held, inter alia, that in making a prima facie case for disparate impact, plaintiffs cannot rely on statistical disparities alone but must identify the specific employment practices that had a disparate impact.  Id. at 658.  In Green II, the Third Circuit, on remand, concluded that the proposed class had "sufficiently identified the employment interview as a discriminatory hiring practice, and established that the interview had a 'significantly disparate impact' on the employment opportunities for black and white applicants."  896 F.2d at 805.

[3]In 1991, Congress amended Title VII to provide that "the complaining party shall demonstrate that each particular challenged employment practice caused a disparate impact, except that if the complaining party can demonstrate to the court that the elements of respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice."  42 U.S.C. § 2000e-2.

"may legitimately frame their challenge to Defendant's practices based on an employment system with multiple components." (Pl's Br. at 5.) Defendant, in contrast, argues that <u>Wards Cove</u> is still good law and cites cases that continue to rely on it.[4] However, this Court need not resolve the impact of the Civil Rights Act of 1991 on the <u>Wards Cove</u> standard for making a prima facie case of disparate impact when the Court did not rely on <u>Wards Cove</u> as the basis for denying Plaintiffs' motion for class certification.

The Court held that Plaintiffs failed to meet their burden of proof with respect to <u>commonality</u> under Rule 23(a). (Opinion at 16.) The Court does not want the parties to be misled. The Court did not require the same quality of proof that would be adduced at trial. Nor did the Court conclude that an employment system with multiple components precluded a finding of commonality. Rather, the Court determined that Plaintiffs had not made a significant showing that the putative class had suffered from a <u>common</u> harm susceptible to <u>common</u> proof. In reaching this conclusion, the Court noted that Plaintiffs failed to identify any nexus between their statistical analyses and a <u>common</u> discriminatory policy, practice, or decisionmaking process at the operating companies, as required by Rule 23. (Opinion at 16.) Here, the putative class consists of over 8,000 employees working at more than thirty different operating companies with distinct human resources departments. There was no indication that the decisionmaking processes were the same across the operating companies. Evidence presented by Defendant

---

[4]<u>See, e.g.</u>, <u>Carpenter v. Boeing Co.</u>, No. 02-1019, 2004 WL 2661691, *9 (D. Kan. Feb. 24, 2004), <u>aff'd</u>, 456 F.3d 1183 (10th Cir. 2006) (noting that § 2000e-2(k)(1)(B) codified <u>Watson</u> requirement that plaintiff must isolate specific employment practice at issue when employer combined subjective and objective standards); <u>Garcia v. Veneman</u>, 211 F.R.D. 15, 22 n.7 (D.D.C. 2002); <u>U.S. v. North Carolina</u>, 914 F. Supp. 1257, 1265 n.9 (E.D.N.C. 1996) ("Although some of <u>Wards Cove</u> was altered by the 1991 amendments to Title VII, most of the opinion remains in full force."); <u>Appleton v. Deloitte & Touche</u>, 168 F.R.D. 221, 226 (M.D. Tenn. 1996) ("Courts have determined that the [Civil Rights Act of 1991] did not alter the 'particularity' aspect of <u>Wards Cove</u>.").

suggested wide variation.  Aggregate statistical disparities, without a nexus to an alleged discriminatory employment practice common to the class, are simply insufficient to support a finding of commonality among such a class.[5]

Finally, Plaintiffs maintain that the Court overlooked key evidence that demonstrates commonality.  Plaintiffs point to "potential mechanisms" of discrimination which "may" be the source of discrimination.  (Pl's. Br. at 7-13.)  However, the Court has already considered these alleged sources of discrimination – the lack of universal job posting and varying compensation and performance evaluations systems utilized at the different companies.  The Court previously concluded, as it does now, that Plaintiffs failed to meet their burden of proof.  As the Court stated in its Opinion, to demonstrate commonality, Plaintiffs must make a "significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination."  (Opinion at 8.)  The problem with all of the "potential" mechanisms of discrimination cited by Plaintiffs is that the alleged discriminatory effect is speculative at best.  In effect, Plaintiffs challenge Johnson & Johnson's decentralized business structure which delegates to the individual operating companies the authority to develop and tailor employment policies and practices to meet the companies' particular needs.  Plaintiffs suggest that this decentralized structure necessarily allows subjectivity and bias to enter the decisionmaking process.  The Court

---

[5]In a letter to the Court dated February 8, 2007, Plaintiffs direct the Court's attention to Dukes v. Wal-Mart, Inc., No. 04-16688, 2007 WL 329022 (9th Cir. 2007), in support of their motion for reconsideration.  However, Wal-Mart does not change this Court's analysis because the facts of Wal-Mart differ from the present case in a critical respect.  In Wal-Mart, the central proof of commonality existed in the form of Wal-Mart's centralized, homogeneous structure and common human resources policies.  In affirming the lower court's finding of commonality, the Ninth Circuit stated, "Plaintiffs produced substantial evidence of Wal-Mart's centralized company culture and policies, which provides a nexus between the subjective decision-making and the considerable statistical evidence demonstrating a pattern of discriminatory pay and promotions for female employees." Id. at *9 (emphasis added).   Johnson & Johnson's decentralized corporate structure, in contrast, undermines its commonality.

disagrees.  As the Court stated in a footnote:

> The fact that a company has a decentralized employment structure in which
> distinct and diverse subsidiaries have the freedom to develop their own
> employment policies and practices in accordance with general corporate
> guidelines, does not in and of itself establish that there is excessive subjectivity.
> The critical question is whether the human resources departments at the operating
> companies have implemented the Johnson & Johnson policies in an excessively
> subjective manner.  Plaintiffs did not demonstrate this.  To the contrary, Dr. Outtz
> suggested that the policies and practices were consistent with best practices.

(Opinion at 13 n.3).  Plaintiffs' proof falls short of the standard for class certification.[6]

Plaintiffs attempt to resurrect arguments previously made to and rejected by the Court.

This is not the purpose of a motion for reconsideration.  A party is not entitled to a second bite at

the apple.  Moreover, Plaintiffs have not demonstrated the need to correct a clear error of law or

fact or to prevent injustice.

## II.  REQUEST FOR ALTERNATIVE CLASS DEFINITION

Plaintiffs ask the Court to certify a narrower class than the one initially proposed in the

event that the Court denies Plaintiffs' motion for reconsideration.  Plaintiffs do not base their

request on a change in the law, newly discovered evidence, or clear legal error by the Court.

Plaintiffs could have, but chose not to, asked the Court to consider alternative class definitions in

its motion for class certification.  Now, following extensive briefing on class certification, a full

day's hearing, and the Court's ruling, is not the time to propose new class definitions or to make

new arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration, or, alternatively, for

---

[6]Plaintiffs failed to meet their burden of proof with respect to both their disparate impact
and disparate treatment claims.  Since Plaintiffs did not identify a common discriminatory
employment policy affecting the class, their failure to monitor argument necessarily collapses.

certification of a narrower class, is denied.

<u>**s/William H. Walls**</u>

United States Senior District Judge