
FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NILDA GUTIERREZ, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON<br><br>                Defendants. | **OPINION**<br><br>Civ. No. 01-5302 (WHW) |

**Walls, Senior District Judge**

      Plaintiffs Nilda Gutierrez, Linda Morgan, Wayne Brown, and Krista Marshall have filed a renewed motion for class certification. This Court denied plaintiffs' first motion on December 16, 2006 because plaintiffs had failed to identify any policy or practice common to the putative class that was excessively subjective. Gutierrez v. Johnson & Johnson, 467 F. Supp. 2d 403 (D.N.J. 2006). The great diversity of the class – reaching over 8,000 Johnson & Johnson ("J&J") employees in dozens of companies nation-wide, holding myriad job titles – strongly weighed against plaintiffs' allegations of commonality.

      It was plaintiffs' prerogative to file a renewed motion, and they did so. They reduced the size of the putative class by more than half, but the revised class definition hardly narrows the original class's excessive occupational and geographical diversity. The class would still include "employees from entry-level positions to upper management, working in different capacities for companies operating in different markets," which this Court has already found overly broad. Id.

at 412.  Indeed, the only types of employees excluded from the revised class are employees in non-exempt positions, technicians, sales employees, and high-level managers.  (Pls.' Mem. in Supp. of Renewed Mot. for Class Certif. ("Pls.' Br.") 2.)  This Court continues to find that plaintiffs have not identified any common policy that could affect a class as sweeping as this proposed one.  Because plaintiffs' second motion does not cure the defects of their first motion, the renewed motion is denied.

## FACTUAL BACKGROUND

In its 2006 opinion, this Court described the following, which remains relevant:

Defendant Johnson & Johnson is a multi-national conglomerate of consumer and healthcare companies, thirty-five of which are U.S. companies.  Although popularly known for its consumer products such as baby powder and band-aids, Johnson & Johnson includes medical device companies that market joint implants and surgical instruments, diagnostic companies which provide laboratory testing equipment and software, and pharmaceutical companies that develop and sell prescription drugs.  Johnson & Johnson has employees in positions such as clerical staff, sales representatives, biochemists, engineers, research scientists, physicians, lawyers, and computer specialists.

Johnson & Johnson Corporate is headquartered in New Brunswick, New Jersey. The Defendant has a decentralized management framework. Corporate headquarters sets general guidelines; each of the thirty-five operating companies is responsible for running its own business operations on a day-to-day basis and for managing its personnel.  At the corporate level, Johnson & Johnson has a board of directors and a ten member Executive Committee.  Johnson & Johnson maintains a Corporate Credo which expresses the Company's philosophy as to how it wishes to conduct business. The Credo states that "Compensation must be fair and adequate . . . . There must be equal opportunity for employment development [a]nd advancement for the qualified."  The Credo is displayed on a large stone plaque at corporate headquarters, in Johnson & Johnson's annual reports, on the corporate webpage, and in offices throughout the organization.

Corporate headquarters maintains a Compensation and Benefits Committee, a Management Compensation Committee, and Worldwide Compensation Resources.  It offers the operating companies resources such as training, software,

2

and planning tools.  Corporate headquarters issues employment guidelines to the companies regarding compensation, promotion, and performance evaluation systems.  However, these guidelines are implemented differently by the human resources departments of each of the operating companies, resulting in significant differences in employment practices.

At the subsidiary level, each operating company has its own headquarters and operational facilities, as well as its own senior management.  The senior management is responsible for all aspects of the business entity, including compliance with laws and regulations.  Each operating company has an independent human resources organization which operationalizes guidelines from Johnson & Johnson Corporate and develops employment policies and practices for the company.  As example, if Johnson & Johnson Corporate sets the range of bonuses, it is up to each operating company to determine the criteria for awarding bonuses.  Each operating company also has an EEOC officer and is responsible for satisfying its own affirmative action plans and goals.  It is only with respect to top level positions at the operating companies that Johnson & Johnson Corporate personnel are involved in decision-making processes related to hiring, promotion, evaluation, compensation, and succession planning.

Plaintiffs . . . are former Johnson & Johnson employees of African American and Hispanic descent.  Plaintiffs allege they were underpaid relative to comparable Caucasian employees and denied promotions on account of race and ethnicity.  Plaintiffs' Complaint alleges that common employment policies, adopted by Johnson & Johnson senior management, permit unmonitored managerial discretion as a regular component of pay and promotion decisions.  According to Plaintiffs, excessively subjective employment practices have led to gross disparities in pay and promotion.  Plaintiffs allege that these violations are systemic and constitute a pattern and practice that permeates Johnson & Johnson's domestic operations.

Gutierrez, 467 F. Supp. 2d at 405–07.

## PROCEDURAL HISTORY

Plaintiffs brought this suit against J&J on November 15, 2001, asserting that J&J exhibited a pattern of race discrimination under Title VII, 42 U.S.C. § 1981, and the New Jersey Law against Discrimination, N.J. Stat. § 10:5-1 et seq.  They seek declaratory, injunctive, and other equitable relief including back pay for themselves and others similarly situated, and

compensatory and punitive damages for themselves alone. (Compl. ¶ 2.) They moved on September 27, 2004 to certify a class, which would encompass "[a]ll persons of African and/or Hispanic descent employed by defendant Johnson & Johnson in any permanent salaried exempt or nonexempt position in the United States at any time from November 15, 1997, to the present." (Pls.' Br. 2.)

On December 19, 2006, this Court denied plaintiffs' motion, finding that plaintiffs failed to establish the commonality, typicality, and adequacy elements required by Federal Rule of Civil Procedure 23(a). The Court found that to establish the commonality element, plaintiffs would need to show a "companywide policy or practice of discrimination at the Johnson & Johnson companies that was common to the aggrieved class." 467 F. Supp. 2d at 408-09. Plaintiffs "failed to identify any policy that they allege is the source of discrimination," offering no "expert report[s] concluding that any of the policies, as developed and implemented by the human resources departments at the operating companies, are excessively subjective." 467 F. Supp. 2d at 411. And the Court found that the proposed class was simply too diverse, encompassing as it did thousands of employees with a wide variety of job titles within thirty-five different companies. 467 F. Supp. 2d at 412.

Plaintiffs appealed to the Third Circuit, which denied their petition on grounds of untimeliness. The Third Circuit observed: "plaintiffs who find themselves in the same position as the Petitioners in this matter are not without recourse. Those plaintiffs may request that the district court alter or amend its order on class certification; this request can be made at any time prior to the entry of final judgment." Gutierrez v. Johnson & Johnson, 523 F.3d 187, 199 n.12 (3d Cir. 2008). Plaintiffs then moved for reconsideration of this Court's denial of plaintiffs' motion for class certification or, alternatively, for certification of a narrower class definition.

4

The motion was denied on April 10, 2007.  See Gutierrez v. Johnson & Johnson, Civ. No. 01-5302, 2007 WL 1101437 (D.N.J. Apr. 10, 2007).  Plaintiffs then made new discovery requests for the purpose of determining whether they could renew their motion for class certification with a new class definition.  (Pls.' Letter Br., July 7, 2008.)  In its denial of that request, the Court reminded plaintiffs that:

> It is conceivable that during the second phase of discovery into the merits of the individual plaintiffs' claims, plaintiffs may discover new information to support their class allegations. As Rule 23 of the Federal Rules of Civil Procedure permits, '[a]n order that grants or denies class certification may be altered or amended before final judgment.' Fed. R. Civ. P. 23(c)(1)(C).  If Plaintiffs are able to renew their motion for class certification obviously the Court will consider it to determine the presence or absence of merit.

Gutierrez, Civ. No. 01-5302, 2008 WL 2945987, at *4 (D.N.J. July 30, 2008).  Plaintiffs filed their present motion on July 31, 2009.

## STANDARDS

Federal Rule of Civil Procedure 23(c)(1)(C) allows courts to alter or amend orders granting or denying class certification "prior to the entry of final judgment."  Gutierrez v. Johnson & Johnson, 523 F.3d 187, 199 n.12 (3d Cir. 2008) (citing McNamara v. Felderhof, 410 F.3d 277, 280 (5th Cir. 2005)).  A court may revisit a prior denial after developments in the factual background, a modified proposed class definition, new class representatives, or any other changes which may cure defects earlier found by the court.  See, e.g., Zenith Labs., Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir. 1976); Bayshore Ford Truck v. Ford Motor Co., Civ. No. 99-741, 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010); In re Fleetboston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 338 (D.N.J. 2008).

To be certified, a proposed class must satisfy each of the four requirements of Federal Rule of Civil Procedure 23(a)[1] and qualify as one of the three types of classes described in Rule 23(b).  See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).  Rule 23(a) requires proof of (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a)(1).  Rule 23(b) allows class actions when:

> (2) [T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in maintaining a class action.

Fed. R. Civ. P. 23(b).

The moving party has the burden of proving each of the statutory elements by a preponderance of the evidence.  Hydrogen Peroxide, 552 F.3d at 320 ("[T]o certify a class the

---

[1] Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23."). The necessary facts must be found, not assumed. See id. at 316 n.15 (quoting Unger v. Amedisys Inc., 401 F.3d 316, 321 (5th Cir. 2005)).

In determining whether a class should be certified, the question is whether the requirements of Rule 23 have been met – not whether the moving party has stated a cause of action or is likely to succeed on the merits. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). In Coopers & Librand v. Livesay, however, the Supreme Court noted that "[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims." 437 U.S. 463, 469 n.12 (1978). The Third Circuit, following Livesay, acknowledged that "[i]n reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." Newton v. Merrill Lynch, Inc., 259 F.3d 154, 168 (3d Cir. 2001).

## DISCUSSION

### I.  Federal Rule 23(a)

#### A. *Numerosity*

The proposed class would include about 3,500 current and former employees. Numerosity, which is generally satisfied where the proposed class contains more than forty plaintiffs, is not at issue here. See Gutierrez, 467 F. Supp. 2d at 408 (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.")).

### B. *Commonality and Typicality*

As this Court observed in its earlier opinion denying plaintiffs' motion for class certification, the "commonality and typicality requirements tend to merge." Gutierrez, 467 F. Supp. 2d at 408 (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 158 n.13 (1982)). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. To prove typicality, plaintiffs must show that "'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)(3)). Commonality is satisfied where plaintiffs have made a "*significant showing*," Hartman v. Duffey, 19 F.3d 1459, 1472 (D.C. Cir. 1994), that "the named plaintiffs share at least one question of law or fact with the grievances of the prospective class." Baby Neal, 43 F.3d at 56.

The Supreme Court found in General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982), that excessive subjectivity can be a common practice validating certification of a class. Its oft-cited Footnote 15 states: "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through *entirely subjective* decisionmaking processes." 457 U.S. 147, 159 n.15 (1982) (emphasis added); see also Dukes v. Wal-mart Stores, Inc., 603 F.3d 571, 612 (9th Cir. 2010) ("[C]ourts from around the country have found '[a]llegations of similar discriminatory employment practices, such as the use of entirely

8

subjective personnel processes that operate to discriminate, [sufficient to] satisfy the commonality and typicality requirements of Rule 23(a).'") (citation omitted).

There is some question among the circuits as to whether a policy or practice must be *entirely* subjective or only partially subjective to satisfy commonality. This Court finds the Sixth Circuit's discussion in Bacon v. Honda instructive. Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565 (6th Cir. 2004). The Sixth Circuit held that the very diverse putative class proposed by plaintiffs could satisfy commonality only through a wholly subjective policy or practice. 370 F.3d at 571. The panel found that commonality was not satisfied, because the defendant's decision-making process contained objective elements, and so was not completely subjective. Id. The Sixth Circuit objected that plaintiffs, in urging the court to find that a decision-making process containing both subjective and objective elements could satisfy commonality, wrongfully conflated the rigorous standard for class certification in Falcon with the looser standard for establishing a prima facie case of disparate impact found in Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 989-90 (1988):

> The two exceptions are not interchangeable, however. Plaintiffs are trying to demonstrate eligibility for class membership, which is governed by the 'entirely subjective' requirement in Falcon. They must prove that the potential members of the class actually have something in common: they are subject to random decision-making. As an entirely separate matter, the Court has been cognizant of the difficulties inherent in proving discrimination and therefore set a relatively low bar for establishing a *prima facie* case. Therefore, counting mixed criteria as subjective furthers the goal of making sure that valid claims get to a jury. The constructive subjectivity in Watson cannot substitute for the actual and complete subjectivity required for the exception in Falcon, because the cases deal with two unrelated legal issues: class membership and the elements of a *prima facie* case. We hold that the Falcon requirement is not met because the plaintiffs have not shown that the wide range of class members are all subject to the same, exclusively-subjective, decision-making process.

370 F.3d at 572 (internal citations omitted). This Court agrees – to satisfy Falcon's high bar, plaintiffs must show that the policy or practice common to the class was entirely subjective.

9

Plaintiffs' first motion for class certification was denied because plaintiffs did not identify any common policy or practice, and the broad occupational and geographic diversity of the purported class weighed against a finding of commonality.  Gutierrez, 467 F. Supp. 2d at 412-13.  In their renewed motion, plaintiffs' expert, Dr. Martell, has identified three policies and practices common to all J&J subsidiaries that he says may allow for excessive subjectivity: J&J's initial compensation-setting system; its work performance appraisal instrument; and its annual calibration sessions at which performance ratings are finalized.  None of these are entirely subjective.

Dr. Martell's first identified common practice – initial compensation setting – is not excessively subjective because the practice includes meaningfully objective standards.  The compensation staff at each J&J subsidiary assigns every job position a "job code" that "'provide[s] some level of description regarding what the job is in terms of function and hierarchy and scope.'" (Pls.' Br. 8 (quoting Obler Dep. 96, Jan. 8, 2004).)  Each code is associated with a salary range.  Although managers are permitted to award salaries outside that range, the salary range and job codes provided by upper management are substantively objective elements.

The second alleged common practice – the work performance appraisal instrument – is also sufficiently objective to defeat plaintiffs' argument that it is excessively subjective.  J&J employs a nine point rating scale with steps such as "[p]erformance consistently exceeds job standards," and "[p]erformance has generally achieved job standards." (Pls.' Br. Appx. A: Expert Report of Richard F. Martell ("Martell Report") 24, July 31, 2009.)  Dr. Martell criticizes this scale as excessively subjective because "objective descriptions of what the category labels actually mean and a standardized basis against which to assign a specific rating are lacking."

(Martell Report 37.)  This argument holds no water.  While job standards may differ depending on the job, all supervisors know when an employee "[c]onsistently does not meet job standards," just as all supervisors know when an employee "[c]onsistently exceeds job standards by a significant degree."  (Martell Report 37.)  This rating scale is an objective measure of an employee's performance; it does not "inject[] excessive subjectivity into a supervisor's judgments."  (Martell Report 38.)  Evaluation of a human's work performance cannot, in this Court's view, be reduced to the definition and resolution of a mathematical equation.

The third alleged common practice also contains objective elements.  Each of J&J's business units has an end-of-the-year calibration session that serves to finalize every employee's performance rating.  This involves a meeting where a supervisor presents his recommendation for employees' performance scores to a human resources representative and upper management.  At this meeting, every employee's final performance score is settled by calibrating recommended performance scores to J&J score distribution guidelines.  The resulting score determines compensation increases for merit and yearly bonuses.  The J&J score distribution guidelines are an objective ruler against which all J&J employees are measured, preventing this third policy from being excessively subjective.

Because this Court finds that each of the three identified common systems contains objective standards, this Court is not convinced that any of them are entirely subjective, as required by Falcon.  See Vuyanich v. Republic Nat'l Bank of Dallas, 723 F.2d 1195, 1199-1200 (5th Cir. 1984) (vacating the district court's grant of class certification because the bank considered education and experience – "two objective inputs" – in the hiring process); Webb v. Merck & Co., Inc., 206 F.R.D. 399, 407 (E.D. Pa. 2002) ("Since defendant's decision-making processes with regard to promotion and compensation are at least in part objective based on the

11

collective bargaining agreements and other objective practices, plaintiffs cannot establish that defendants utilized a decision-making process which was *entirely* subjective for purposes of satisfying Rule 23(a)'s commonality and typicality requirements."); Reid v. Lockheed Martin Aeronautics Co., 205 F.R.D. 655 (N.D. Ga. 2001) (finding that plaintiffs failed to prove commonality and typicality, because they have not "submitted 'significant proof' that the decision-making processes at Lockheed's Marietta facility were entirely subjective . . . ."). But see Staton v. Boeing Co., 327 F.3d 938, 955 (9th Cir. 2003) (understanding Falcon's "entirely subjective" comment as a "demonstrative example rather than a limited exception to the overall skepticism toward broad discrimination class actions").

  Moreover, the Court's initial finding – that the occupational and geographical diversity of the putative class undermined plaintiffs' allegations of commonality – still holds. See Gutierrez, 467 F. Supp. 2d at 412-13 ("The vastness of the proposed class undermines the claim that all of the putative class members were subject to common employment practices."). Also, this Court finds that the considerable occupational and geographical diversity of the putative class would render the case *unmanageable*, a determination that goes to Rule 23(b)(2), and one that the Third Circuit has deemed mandatory. See Hohider v. U.P.S., Inc., 574 F.3d 169, 202 (3d Cir. 2009) ("And were the court to find such relief could go forward under Rule 23(b)(2), it would then need to address how that relief would be managed . . . ."). Although the revised putative class no longer includes sales positions (Def.'s Mem. of Law in Opp. to Pls.' Renewed Mot. for Class Certif. ("Def.'s Opp. Br.") Appx. A: Report of Dr. James Outtz 17), it continues to include "biochemists, engineers, research scientists, physicians, lawyers, and computer specialists, among many others" in thirty-five autonomous companies. (Def.'s Opp. Br. 2.) Various courts have denied class certification for putative classes far narrower than that proposed by plaintiffs.

Indeed, this Court joins several other courts in finding that occupational and geographical diversity are factors adverse to certification. See Stott v. Haworth, 916 F.2d 134, 145 (4th Cir. 1990) ("We can find no commonality or typicality between the claims of each plaintiff that would propel this case through class treatment when the positions held by each plaintiff were so divergent."); Barry v. Moran, Civ. No. 05-10528, 2008 WL 7526753, slip op. at 12 (D. Mass. Apr. 7, 2008) (holding that commonality was not met because the putative class "held a variety of administrative positions within different areas of the [Boston Fire Department], and . . . they had differing employment histories and experience."); Donaldson v. Microsoft Corp., 205 F.R.D. 558, 567 (W.D. Wash. 2001) ("Courts have recognized that is not possible to make a finding of commonality where putative class involves extensive diversity in terms of geography, job requirements, and/or managerial responsibilities."); Abram v. United Parcel Serv. of Am., Inc., 200 F.R.D. 424, 432 (E.D. Wis. 2001) (denying certification, because a putative class of 425 diverse types of UPS supervisors "weighs heavily against certification," especially when the common question of law or fact "is the elusive 'practice' of subjective decisionmaking.'"); Betts v. Sundstrand Corp., Civ. No. 97-50188, 1999 WL 436579, at *6 (N.D. Ill. June 21, 1999) (denying certification where the named plaintiffs themselves held extremely varied jobs, including janitors, assemblers, financial analysts, traffic analysts, administrative coordinators, and housekeepers, because "[s]uch a wide range of jobs does not indicate a commonality of facts").

This diversity is not the only obstacle to certification. J&J's decentralized management structure, which assigns near-complete autonomy to its thirty-five American subsidiaries, compels a denial of certification. See Ellis v. Elgin Riverboat Resort, 217 F.R.D. 415, 424 (N.D. Ill. 2003) ("[A] decentralized hiring procedure, which allows decisionmakers to consider

13

subjective factors, supports individual claims of discrimination but cuts against the assertion that an employer engages in a pattern or practice of discriminatory hiring as a standard operating procedure."); see also Garcia v. Johanns, 444 F.3d 625, 632-33 (D.C. Cir. 2006) ("Establishing commonality for a disparate treatment class is particularly difficult where, as here, multiple decisionmakers with significant local autonomy exist."). But see Dukes v. Wal-Mart, 603 F.3d 571, 603 n.23 (9th Cir. 2010) (affirming district court's finding of commonality despite the great geographic and moderate occupational diversity of the class); Wilfong v. Rent-A-Center, Inc., Civ. No. 00-680, 2001 WL 1795093, at *4 (S.D. Ill. Dec. 27, 2001) ("Where, as here, there is strong evidence of a uniform policy, decentralization of the actual decision-making process, even if it exists, does not preclude a finding of commonality.").

In sum, this Court now finds, for a second time, that plaintiffs' proposed class renders the existence of common questions of law or fact exceedingly unlikely; indeed, plaintiffs have not articulated any common policy or practice that is excessively subjective. Because plaintiffs have not established commonality, plaintiffs are unable to show that their claims are typical of those of the putative class – that is, plaintiffs' claims cannot be typical because the class has no unifying feature.

### C. Adequacy

Like Rule 23(a)'s typicality requirement, the adequacy requirement tends to merge with commonality, at least where there are no concerns about the competency of class counsel or conflicts of interest. Falcon, 457 U.S. at 158 n.13. As in the 2006 Opinion, this Court is constrained to find that "the named plaintiffs cannot adequately represent the entire class because they have not identified a Johnson & Johnson employment practice common to the entire class" that is excessively subjective. Gutierrez, 467 F. Supp. 2d at 414.

II.     **Federal Rule 23(b)**

This Court need not address whether plaintiffs have met the requirements of Rule 23(b), because plaintiffs have not met the requirements of Rule 23(a).

## CONCLUSION

Because plaintiffs have failed to establish Rule 23(a)'s requirements as to commonality, typicality, and adequacy, plaintiffs' motion to certify the putative class cannot be granted.

It is on this 30th day of July, 2010:

ORDERED that plaintiffs' renewed motion for class certification is DENIED.

<div style="text-align:right">

**s/ William H. Walls**
United States Senior District Judge

</div>